1  Nathaniel Sterling, State Bar No. 215734
   STERLING LAW FIRM
2  4790 Dewey Drive, Suite A
   Fair Oaks, California 95628
3  Phone: 916-801-4386

4  Attorney for Plaintiff, Erika Wong

5

6             UNITED STATES DISTRICT COURT

7         FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  ERIKA WONG                          CASE NO.: 3:18-cv-00124-MEJ

10                                      FIRST AMENDED
              Plaintiff,                COMPLAINT FOR DAMAGES
11                                      BASED ON:
         v.
12                                      1. **Misclassification of**
   ANTHONY LEVANDOWSKI, and DOES 1         **Employee as Independent**
13 through 10, inclusive,                  **Contractor**
                                        2. **Violation of Bus. & Prof.**
14                                         **Code Section 17200 et seq.**
              Defendant.                3. **Fraud and Deceit (Civil**
15                                         **Code 1709-1710; 1534)**
                                        4. **Failure to Pay Wages,**
16                                         **Breaching Written, Oral**
                                           **and/or Implied Contract**
17                                      5. **Breach of Written and/or**
                                           **Oral and/or Implied**
18                                         **Contract**
                                        6. **Negligence (common law and**
19                                         **Cal. Civ. Code 1714)**
                                        7. **Intentional Infliction of**
20                                         **Emotional Distress**
                                        8. **Negligent and/or Intentional**
21                                         **Interference with**
                                           **Prospective Economic**
22                                         **Advantage/Relations**
                                        9. **Negligence Per se for**
23                                         **Violating Statutes**
                                        10. **Wrongful Demotion**
24                                      11. **Breach of Implied Covenant**
                                           **of Good Faith and Fair**
25                                         **Dealing**
                                        12. **Retaliation against protected**
26                                         **action of employee in**
                                           **Violation of FEHA Cal Gov**
27                                         **Code 12940(h)**
                                        13. **Discrimination and**
28                                         **Harassment in violation of**

STERLING LAW FIRM
4790 Dewey Drive,
Fair Oaks, CA. 95628
TEL. 916-801-4386

FEHA Cal. Gov. Code 12960 et seq.

14. **Negligent and/or Intentional Interference with Contract**

15. **Conversion of Wages and Personal Property**

16. **Negligent Hiring, Training, Retention and/or Supervision**

17. **Failure to Prevent Discrimination, Harassment and/or Retaliation (Cal Gov Code 12940(k)**

18. **Failure to Engage in Interactive Process (Cal. Gov. Code 12940(n))**

19. **Unruh Civil Rights Act Violation**

20. **Age Discrimination in Violation of ADEA (289 USC 621-634)**

21. **Improper Use of Consumer Credit Report (Civ. Code 1785.1)**

22. **Violation of Cal. Labor Code 98.6 (retaliation against employee for taking protected action)**

23. **Violation of Cal. Labor Code 210, 215, 204 (failure to pay wages due)**

24. **Violation of Cal. Labor Code 218.5 (attorneys fees for any action relating to non-payment of wages)**

25. **Violation of Cal. Labor Code 225.5 (penalties, claimed under 17200)**

26. **Violation of Cal. Labor Code 226 (requires itemized pay statements, penalties, claimed under 17200)**

27. **Violation of Cal. Labor Code 226.7, 512 (failure to provide meal and rest periods)**

28. **Violation of Cal. Labor Code 432 (allows employee to get copy of any writing signed)**

29. **Violation of Cal. Labor Code 432.5 (forcing employee to sign illegal agreement)**

30. **Violation of Cal. Labor Code 510 & 515(d) & 1194; FLSA (29 USC 201 et seq) (overtime required beyond 8**

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 93628
TEL. 916-851-4384

hour day or 40 hour week)
31. **Violation of Cal. Labor Code 970 & 972 (misrepresentation inducing change in residence)**
32. **Violation of Cal. Labor Code 1102.5.  Retaliation against Employee for Reporting Legal Violations of Employer**
33. **Violation of Labor Code 3700.5, 3722(b), 3722(d), 3722(f) (Failure to Provide Workers Compensation Benefits**
34. **Retaliatory/Hostile Work Environment in Violation of Title VII**
35. **Violation of Civil Rights Act of 1866 (42 USC 1981) & Civil Rights Act of 1964 (42 USC 2000e)**
36. **Discrimination and Harassment in Violation of Title VII**
37. **Retaliation against Protected Action of Employee in Violation of Title VII**
38. **Discrimination, Harassment and/or Retaliation in Violation of Section 1981**
39. **Request for Declaratory Relief (CCP § 106042, USC 2000e-5(g))**

_____

Plaintiff Erika Wong complains against defendants and demands a trial by jury of all issues except costs and attorneys' fees, and for causes of action Wong alleges the following:

<u>Nature of the Claims</u>

1.      This is an action for declaratory, injunctive and equitable relief, for monetary damages and attorney fees, to redress Defendant's unlawful employment practices and retaliation against Plaintiff, including Defendant's unlawful discrimination, harassment and retaliation against Plaintiff because of her protected action(s) and repeated assertions of her legally protected rights refused and denied by her employer Defendants, and based on her age and/or religion and/or race

STERLING LAW FIRM

and/or national origin, and complaints about such unlawful discrimination, harassment and retaliation, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").

2.      Defendant's conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to her professional and personal reputation, and severe mental anguish and emotional distress, and entitles Plaintiff to punitive and/or exemplary damages.

<u>The Parties</u>

3.      Plaintiff Erika Wong ("Wong" or "Plaintiff") is an individual residing in San Francisco County, California.

4.      Defendant Anthony Levandowski ("Levandowski" or "Defendant") is an individual whose last known residence was Oakland, Alameda County, California.

5.      The true names and capacities, whether individual, corporate, associate or otherwise, of defendants named herein as Does 1 through 10, inclusive, are unknown to Plaintiff who therefore sues said defendants by fictitious names (the "Doe Defendants"). Plaintiff will amend this complaint to allege their true names and capacities when such have ascertained. Upon information and belief, each of the Doe Defendants herein is responsible in some manner for the occurrences herein alleged, and Plaintiff's injuries as herein alleged were proximately caused by such defendants' acts or omissions. (All of the Defendants, including the Doe Defendants, collectively are referred to as "Defendants").

<u>Jurisdiction and Venue</u>

6.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under Title VII, Section 1981 and the ADA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

STERLING LAW FIRM
4730 Bronx Drive
Palo Alto, CA, 93628
TEL. 415-851-4368

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

8.      Plaintiff has obtained a right to sue letter from both the DFEH and the EEOC prior to commencing this civil action, and filed suit within 90 days of receipt of right to sue letter from EEOC.

<u>Facts common to more than one cause of action</u>

9.      <u>Introduction</u>: Erika Wong earned a B.A. with a double major from an accredited four-year University.  Later Wong received a degree in the medical "imaging" field.  She received two California medical licenses/permits issued by the Cal. Department of Health Radiologic Health Branch. She has worked "on-call" at various surgery centers for over ten years in radiology, with a specialty in "fluoroscopy" also known as "3-D live imaging." (Exhibit 21, 57).  Wong entered a medical rotation in "interventional radiology" for one year.  After her internship, Wong worked at a law firm briefly that specialized in workers compensation.  In the Spring of 2017, Wong was enrolled in a legal course at Stanford University.  During Wong's 2017 semester in Palo Alto she attended CLE lectures weekly, lectures sponsored by Stanford Law School, including seminars on anti-trust, non-compliance with anti-trust laws/investigation of business practices/high-tech mergers, autonomous vehicles, 3-D printing, unmanned aerial vehicles, virtual reality, economics in autonomous driving, legal and moral strategies, economic sustainability, litigation, patent law, and cyber law. (Exhibit 38, 48)

10.      Wong has been employed by engineer Anthony Levandowski since December 2016. Wong responded to a craigslist ad posted for the Berkeley area on or about December 14, 2016. The offered hourly rate was $50 an hour. Suzanna Musick responded to Wong's email on or about December 16, 2016.

<u>General Allegations</u>

11.      Beginning on or around December 14, 2016 Suzanna Musick, Levandowski's stepmother, put an advertisement on craigslist in the Berkeley area. The advertisement involved general childcare duties located in Oakland, CA.  Wong responded to the advertisement on or around December 16, 2016 (Exhibit 22).  After several phone conversations, and a ten-hour work

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA 95628
TEL. 415-951-4366

day with Levandowski and his children in December 2016, Levandowski hired Wong. Musick, as a representative of Levandowski, offered Wong the position to start at $45 an hour.  Musick promised Wong her raise increase after a month, to $70/hr due to her pediatric medical background and college education. Musick stated with Wong's extensive medical background in pediatrics "a raise would not be a problem."

12.     It was agreed upon the first day of hire that Wong would be paid every Friday by cash or check (Exhibit 1).  Levandowski was late in pay to Wong on over two dozen occasions (Exhibit 2, 3, 27). The pay date was eventually changed to Thursday evenings as stated by Levandowski.  During the month of December 2016 through March 2017, Wong received cash and checks from Levandowski (Exhibit 1). The address of the checks were written with Levandowski's name corresponded to Musick's address in Napa (Exhibit 1).

13.     Musick also stated to Wong that Levandowski would be able to give Wong a credit card for household purchases (Exhibit 22, 62).  In January 2017, Wong's wage/payment system was set up on Levandowski's Wells Fargo "Surepay" for direct deposit to Wong (Exhibit 2, 3). She opened a separate Wells Fargo account to receive her weekly wages from Levandowski, ending in 0331 (Exhibit 1, 3).

14.     It was agreed upon hire (through phone conversations) from Musick that work hours promised to Wong were Thursdays at 3:30 p.m. until late evening hours (up to 3 a.m. and Saturdays 10 a.m. to 3 a.m. or until early morning hours on Sunday morning (Exhibit 23). After about a month, Levandowski changed the work hours, shortening her wages, work hours and overtime pay that were initially promised to her by Musick and Levandowksi. Musick did inform Wong that her work services would be to oversee the care of Anthony's children, plan weekend activities while he was at "work" (Exhibit 5, 22, 62). Wong was also promised she would be paid for ten hours of work for research in planning activities/shopping for Levandowski's household items each week outside of her wages.

15.     Levandowski lived in a small two-bedroom residence.  There was a twin bed in the living room area for Wong to sleep on as Musick and Levandowski told Wong upon hire that her work hours scheduled were two evenings a week, perhaps requiring a stay until 8 a.m. the next

STERLING LAW FIRM
4750 Solano Drive
Palo Alto, CA, 95628
TEL: 855-851-4388

morning. Wong had asked for a work agreement in writing but never received one from Musick nor Levandowski, as promised to Wong during her initial employment with Levandowski.

16.     In January 2017, during a telephone conversation between Musick and Wong, Wong inquired what the relationship status was between the mother of Anthony's children, and what the mother's occupation was.  Musick stated Stephanie Olsen worked as a blog writer. Wong researched Olsen's name, Olsen stopped writing for her blog in 2012. Musick mentioned the relationship between Levandowski and Olsen was strained, complicated, and soured shortly after A.O.L.'s birth. Levandowski broke off the engagement proposal to Olsen. Musick stated, "Stephanie and Anthony do not get along." Anthony Levandowski later mentioned to Wong, "Maria", Olsen's full-time daytime nanny had been working for Olsen since the birth of their first child A.O.L.

17.     During the month of January 2017, Levandowski had asked Wong to open a Wells Fargo checking account for his household expenses (Exhibit 1).

18.     On January 7, 2017 Gabby Levandowski (Exhibit 36) came over for dinner. She discussed the other Levandowski family members (Exhibit 34,58). The names Max Levandowski (Exhibit 30, 37), Rich Bender (Exhibit 24, 39) Woefffle (Exhibit 10, 58), and  others were mentioned (Exhibit 24, 37). Wong asked her "What does Bender do for work?" Gabby Levandowski said, "He does patent law, he makes the most money for our family. Those "little monsters" (M.O.L. and A.O.L.) have the most money. Bender works closely Miller (Exhibit 39) and Stojanovski (Exhibit 39). Ognen traveled a lot when he was younger in hopes of selling lidar all over the world.   They all work closely with our lawyers in Oakland." Wong asked, "Does the whole family work for Otto Trucking? I am confused, I thought Otto was only in San Francisco." Gabby became silent and changed the subject immediately. Wong asked about Stephanie Olsen and Ericka Fleischhauser. Gabby Levandowski (Exhibit 36) made the statement "We don't like Olsen, Anthony and Stephanie do not get along, she extorts money from him all the time." Gabby mentioned in passing their family members were fans of "Harry Potter." Gabby Levandowski also told Wong, Gabby and Anthony Levandowski had a really close and tight relationship. Gabby Levandowski texted Wong at 8:21 p.m. "Doesn't leave until he (Anthony Levandowski) knows

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA 93628
TEL: 353-953-4384

they're asleep (Exhibit 36). Wong met Olsen at Levandowski's home in the month of January 2017 or early February 2017.

19.     On January 11, 2017 Musick sent Wong an email and food allergy list for Levandowski's younger son, M.O.L. The emails were from a "Maureen Levandowski" and cc'd to Stephanie Olsen (Exhibit 5).

20.     Wong believes the Levandowski children lived for a short time in Tacoma, Washington where Levandowski's aunt Maureen Bender Levandowski (Exhibit 10, 24, 58) has residence.

21.     Wong believes Richard Bender (Exhibit 39) is Levandowski's uncle, an attorney that specializes in patent law in Pittsburg, Pennsylvania. Wong assumed in January 2017, based on her conversation with Gabby Levandowski that "Rich Bender" (Exhibit 39) was an employee of "Otto Trucking". "Rich" Bender's name was frequently mentioned between Levandowski, Anthony's brother Mike Levandowski (Exhibit 51), Stojanovski and Miller. They frequently visited the Levandowski's home in Berkeley for dinner.  Wong assumed based on Mike Levandowski's (Exhibit 24) conversations that Mike worked in "sales" at Otto Trucking.  Mike Levandowski traveled between Pittsburg, San Francisco and other areas.  Wong regularly ate dinner with the Levandowski family members. After dinner, Anthony Levandowski ideally left the residence around 8:00-8:30 p.m. to attend business meetings in Palo Alto (Exhibit 8), the east bay, San Francisco, or meet with Fleischhauer (Exhibit 9). Wong told Levandowski, during his frequent business meetings/calls at home: "I have my earphones on" (Exhibit 4).

22.     On January 12, 2017 Levandowski wrote check #1054 to Wong. Levandowski paid Wong two weeks late (Exhibit 1). Wong opened an account on January 13, 2017 for Levandowski, under her name.  Levandowski's account number ended in 7983 (Exhibit 1, 2). Wong made a cash deposit to Levandowski's account, for a total of $75.00.  Levandowski wrote on the Wells receipt $75.00 was received in his account (Exhibit 1). There were also several file folders set up for Wong to keep Levandowski's receipts for purchases and bank statements (Exhibit 1, 62). Levandowski had asked her to throw away the receipts, bank statements and a work hour record. Wong kept record despite Levandowski's request she not keep record (Exhibit 43).

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA. 93628
TEL. 415-951-4368

23.     On January 17, 2017 Levandowski sent a text and pdf to Wong for an event for the California Trucking Association Annual Membership Conference (January 20-23, 2017 Monterey Plaza Hotel) in Monterey (Exhibit 27).  Levandowski texted, "I think it's good if they come to the talk and we go to the aquarium afterwards and do a shark feeding. I think you can set that up."

24.     On or about Thursday January 19, 2017, Mike Levandowski came over for dinner. (Exhibit 27, 62) Wong overheard the topic of "sales", companies such as "Ford", "Velodyne", and "Argo A.I". They had a conversation about money transfers and cash payments.   Other Levandowski relatives mentioned during the conversation were "Adriana/Adrienne", "Max", "Sylvie Woelffle", "Eric Allaer", "Andre Muller", "Gabby" (Exhibit 36, 58), "Boyd", and "Rich Bender" (Exhibit 24).

25.     Wong believed based on the conversation Levandowski's family members were agents/employees of Otto Trucking.

26.     On January 20, 2017, Levandowski texted Wong "We're staying in Oakland, (no Monterey) can you come at 11?" (Exhibit 27).

27.     On January 20, 2017 Musick sent tickets for entertainment to Levandowski's Palo Alto address at "Cowper." (Exhibit 8) Levandowski and Musick mentioned to Wong "Cowper" was where Anthony received packages and mail. (Exhibit 5, 62) Levandowski frequently referred to "work" at Cowper as "Palo Alto" (Exhibit 5, 27).  Levandowski made the statement often to Wong, "I have to meet with Ognen at Cowper.  I will be back late."

28.     Musick also purchased events in advance for Wong to attend with Levandowski and his children, M.O.L. (4) and A.O.L. (7). One of these events were for Disney on Ice that was scheduled for Saturday March 4, 2017 (Exhibit 5).  Levandowski failed to attend the ice-skating event that weekend, Levandowski later stated on February 23, 2017 to Wong that he would be flying to Hawaii the following weekend (Exhibit 27). Musick also purchased four tickets for the Chinese New Year Parade that was held on Saturday February 11, 2017 (Exhibit 2, 55).

29.     On January 26, 2017 Levandowski gave Wong his two email addresses, robot@uber.com and levandowski@gmail.com (Exhibit 5).

30.     On Friday January 27, 2017 Wong texted Levandowski a photo of his debit card at Wells Fargo. She wrote, "Here is your ATM card number, if you have any questions, please call

STERLING LAW FIRM
4750 State Drive
Palo Alto, CA. 95628
TEL: 415-851-4366

XXXXXXXX the branch manager next week. I assume 11am tomorrow? If things change feel free to text me I then (sic) morning (Exhibit 27). At 8:18 p.m. "Levandowski texted Wong, "No, I won't have the kids until 4 p.m… would love your help until late this Saturday."

31.     On Saturday January 28, 2017, at 1:27 p.m. Levandowski texted, "Looks like I won't be getting them until late and would like to have you come for babysitting tonight, happy to pay you for that, but wanted to give you a heads up so you know you can do other stuff until 7:30 p.m. or so." I'd like to put them to bed before you come by (Exhibit 27). At 5:34 p.m. Levandowski texted, "OK that's fine, if you can be here at 8 p.m. that would be great.  I'll be paying in case that wasn't clear." At 7:33 p.m. Wong received a message from Levandowski, "Hi! We're back and boys are asleep." That evening, M.O.L. (3), Anthony's son cried for several hours. Wong texted Levandowski at 10:54 p.m.to come back immediately to his Berkeley residence. Wong stated, "M.O.L. is calling for you, now what? Should I say ur at store?  He's calling daddy." Levandowski came home  hours later than promised. While waiting for Levandowski's return, Wong took M.O.L. to Levandowski's bedroom to sleep. Levandowski texted "Did he see you?" Wong replied, "Yes of course." Levandowski returned about 3:00 a.m. in the morning, despite his original response that he would be home in 30 minutes (Exhibit 27).  Upon his return, Levandowski gave a loud shout at Wong for removing M.O.L. from the children's bedroom.  "Do not go into the room when he cries!!!  Let him cry until he falls back to sleep!!!" Wong believed this attitude was neglectful.  Levandowski repeatedly asked Wong to neglect his children when they cried in the evening.  He informed her that there was a camera in the children's room.

32.     Levandowski failed to provide the Anthem Blue Cross insurance card information for emergency contact in case of unforeseen health matters for his children M.O.L. (3) and A.O.L. (6), despite multiple verbal and written requests by Wong to provide this information since day one of hire (Exhibit 27). Wong believes Levandowski had other residence(s) in San Francisco. Wong believes his San Francisco residence(s) was under a relative's name, perhaps Maxime Levandowski (Exhibit 37), Adriana Levandowski (Exhibit 46), Ericka Fleishhauser (Exhibit 9) or his own name.

33.     On Saturday February 4, 2017 Levandowski texted Wong, "Also looks like it would be best to have you join at 4 p.m. Is that yes we're on at 4 p.m.?" Wong replied, "Y."   He exited

STERLING LAW FIRM
4750 Steiner Drive
Palm Oaks, CA, 95628
TEL: 314-851-4388

the home after dinner. Levandowski, as usual left his bedroom door open in case the children woke up. Levandowski did not pay Wong her wages that evening. (Exhibit 2)

34.     On February 7, 2017 Wong emailed Levandowski. "Would you kindly put in 200 or so into your grocery account, I think the acct ends in 7983." Also let's take the time please take the time to touch base before you leave the house on Thursday at 830 p.m. You were running later than 9 pm on Saturday so I hesitated to discuss, We can go over some receipts so I can toss out and discuss some other items. Do u need me to stay in the evening? Thanks" (Exhibit 11).

35.     Wong inquired if Levandowski needed Wong for an overnight stay.

36.     On February 8, 2017 Levandowski texted Wong, "I have the kids Friday this week." (Exhibit 27)

37.     Wong texted back, "I would of appreciated a bit more of an advanced noticed about tomorrow. We really need to talk, thanks." Wong texted, "Is your work near California and Drumm streets in downtown? Are you available to meet with me after 6pm to talk for 20 minutes? Just tell me a location near you and I can meet you at 615p.m. Levandowski replied, "I am at 3rd and Harrison." (Exhibit 27)

38.     On February 9, 2017 Wong texted Levandowski, "Can I meet you there at 630pm? I'll uber there." At 6:45p.m. Wong texted Levandowski, "I'm waiting in downtown, did you forget? Where can I leave you my letter?" Levandowski replied with a "sad face emoji."

39.     At 6:57 p.m. Levandowski texted "I'm driving back from Palo Alto." (Cowper) (Exhibit 8, 27).

40.     On or about February 10, 2017 Wong asked Levandowski after dinner "Who did you meet in Palo Alto? Otto is in San Francisco." Levandowski replied, "Engineers in Palo Alto. I had to pick up packages." Wong replied, "I thought Otto is only in San Francisco. I'm confused." Levandowski didn't answer. That evening Levandowski stated to Wong, I will be back late." That evening the Levandowski children discovered inappropriate items in Anthony's bedroom. The children pulled open one of Levandowski's dresser drawers in his bedroom, various sized flesh colored dildos were openly exposed. Wong immediately closed the dresser drawer (Exhibit 6).

41.     On February 11, 2017 Wong met with Levandowski and his children at the Otto Trucking facility at 737 Harrison Street. She drove separately to meet them. Levandowski was late

STERLING LAW FIRM
4750 Sunset Drive
Palo Alto, CA, 93628
TEL. 354-852-4384

several hours, he forgot the New Year Parade passes and Wong was not paid for her waiting times. (Exhibit 27) Wong and the children had a tour of Otto Trucking for several hours, after attending the Chinese New Year Parade (Exhibit 5, 27, 55). Wong signed in at Otto (the front desk), met an employee named "Larry" and greeted the security staff. Levandowski asked Wong to follow him back home to Berkeley to put the boys to sleep.  He told Wong he had to go back out to San Francisco.  Levandowski failed to pay her that evening for the week.  Wong was paid on February 16, 2017, six days later. (Exhibit 3)

42.     On February 22, 2017 Wong texted Levandowski, "Can u please xerox ur(sic) kids insurance, health, at work please, and put in binder tomorrow? Thanks. (Exhibit 27)

43.     Wong arranged a white binder in Levandowski's home to hold Levandowski's receipts and Wong's work hours, there was also a section for "communication" with Levandowski.

44.     Wong texted Levandowski, "Anthony, I do not want to replenish ur(sic) debit card with my own finances, let's please spend time to discuss tomoro(sic) evening, thanks. I sent you two gmails earlier this week with a screen shot of the balance, I am driving let's please discuss tomorrow, thanks." (Exhibit 27).

45.     In February 2017 Wong had discussed tax issues and inappropriate items found in Levandowski's home with her attorney.  Her legal representative suggested the best way to handle the "sensitive" employment situation was by a letter/package, by mail. (Exhibit 7)

46.     Wong noticed during early in her employment period at Levandowski's residence the following: In the evenings, Levandowski had a regular practice of warming his engine until the next morning. Levandowski had two vehicles, an older four door silver Lexus and a black pick-up truck.  One vehicle was sometimes missing, Levandowski mentioned, "A relative or friend drove it around the east bay and "up north." The extension cords and heater keeps the engine warm for the cold nights."  Levandowski was frequently talking on his cell phone talking to other engineers and lawyers, for sales in "lidar technology." Wong assumed "Otto Trucking" had a presence in Israel, Asia and Europe.

47.     After February 23, 2017, Levandowski used "facetime" and the speaker option on his iphone more frequently.

STERLING LAW FIRM
4730 Street Drive
Palo Alto, CA, 95628
TEL. 415-851-4366

48.     During Wong's employment M.O.L. (3) would whisper to Wong at various times, "I know where the cash is", "The cash is in the bedroom", "Daddy has a lot of money in the bedroom." Wong assumed M.O.L. was referring to a piggy bank. Wong noted on a regular basis, Levandowski has a very bad and short-term memory. In the kitchen, and other areas of the house, the cupboards were labeled with "blue tape" identifying the contents in his home.

49.     In Levandowski's home, Wong noted there were also memorabilia/projects discussed of several drone and surveyor companies, Wong realized later most of these lidar related projects/companies were part of Velodyne (past and present) and based in other countries and states such as Michigan and perhaps Georgia.

50.     Levandowski also had a practice of showing car components to his children in the driveway, they were frequently seen taking the engine apart on some days.  The children used "blue tape" to "tape" items on their walls and put cardboard boxes together.

51.     During her employment with Levandowski, Wong attended children's events such as ice-skating and arcades with Levandowski and at times went out to dinner. Wong arranged several children's fieldtrips and attended with Levandowski and his children. Trips included tours of a Berkeley fire truck station, (Exhibit 27, 62) entertainment shows, dining out, etc.

52.     Levandowski received calls often, and gave his ipad to Wong and his children. There was no password on Levandowski's personal devices. After February 23, 2017, Levandowski went to Napa on Saturdays more frequently or stayed in with the children during the day. Wong upon her late afternoon arrival, would occasionally go out for dinner with Levandowski and the children, then return to Levandowski's residence to put the children to bed. Wong frequently checked in with Levandowski to see how many guests/relatives would be in attendance for dinner.

53.     The kitchen in Levandowski's home was small, there was a small art table for two toddlers in the kitchen (A.O.L. and M.O.L.), and one adult chair by a built-in study desk in the kitchen. (For Levandowski). (Exhibit 27, 63)

54.     For months, Wong often stood at the kitchen counter, while Levandowski and the children ate in the kitchen. (Exhibit 27) When dining in with Levandowski, Wong stood in the kitchen on average of about three to four hours. (Exhibit 27) Wong was often standing in the

STERLING LAW FIRM
4750 Sunny Drive
Palo Alto, CA, 95628
TEL. 555-951-4564

kitchen prior to dinner (preparing dinner), standing during dinner, and after dinner (The dishwasher was full during the day, another evening dishwasher load, then hand drying dishes at night).

55.    At most times, the Levandowski children ate in the kitchen, if guests arrived the seating was moved to the dining table in the room next door.

56.    On February 20, 2017 Wong sent Levandowski an email. "Hi, Do you mind adding 200.00 to your account ending in 7983 for Wells Fargo sure pay? I know it's a holiday today but if you can deposit it today it would in by Tuesday or Wednesday this week, be happy to show u a current balance or bank receipts Thursday. Thanks." (Exhibit 11)

57.    On Thursday February 23, 2017 at 11:39 a.m. Wong sent Levandowski a Wells Fargo Surepay request.  She took a screen shot of his Wells Account that had the account number ending in 7983. It had $5.13 in the household account.  Levandowski sent Wong $500.00 at 11:47 a.m. (Exhibit 27) Wong arrived in the early evening and Levandowski was on the phone. Wong was speaking to an attorney, she alleges was Ehrlich for several hours. She noticed Levandowski was profusely sweating and walking around in circles in the living room. Wong sat at the dining table, close to Levandowski.

58.    Levandowski screamed "Fuck! Fuck! Fuck!" all evening.  He stated, "How could they do this to me?" "Miles, what about the clause, you and Abby said this would work!! Fuck! Fuck! Fuck! "What do I do with the discs? What do the contracts say?? Fuck! Fuck! Fuck!" What about Ognen, John, Izzy, and Rich Bender? All of you said all said this would work!!! Shit! Shit! Shit!"  It's all mine, the money, the deals, it's all mine.  What about 'the shit?' These are all my fucking deals!!! All of you fucking attorneys and Randy said this would work!"

59.    The names of Levandowski's family members were mentioned (Exhibit 24, 57).

60.    Levandowski, Wong and his children had dinner late that evening about 8:00 p.m., past their usual bed time.  Levandowski left the house around 9:00 PM and did not come home until several hours later."  That evening Wong googled on her phone "Anthony Levandowski", the newsfeed read Levandowski was served by Alphabet.  Levandowski returned to the Berkeley residence late.

61.    Levandowski texted Wong at 11:25p.m, "About to come back" (Exhibit 27). Levandowski was aware Wong brought newspapers to his home and recycled them at his

STERLING LAW FIRM
4750 Sunset Drive
Palm Desert, CA, 95628
TEL: 354-805-4388

residence. Anthony stated to Wong "I have something to tell you but we can talk about it later. I am going to Hawaii next weekend" (Exhibit 27). He failed to pay Wong that evening. On February 24, 2017 Wong texted Levandowski, "Hmm. Your deposit didn't go through last night in acct 0331, you may have deposited to somebody else's account. He responded back, "OK, I'll try again" (Exhibit 27).

62.    Levandowski paid Wong four days late on February 27, 2017 (Exhibit 3).

63.    The following day on February 24, 2017 Wong sent a text message to Levandowski in the morning asking Levandowski to purchase a larger dining for the kitchen, Levandowski denied Wong's simple request (Exhibit 27, 63). Later that day, Wong printed out the Waymo v. Otto trucking complaint in the afternoon.

64.    During the month of March 2017, Wong met the other family members, Musick, Stephen (Steve) Levandowski. Wong was also introduced to Ericka Fleischhauser.

65.    On or about Wednesday March 1, 2017 Levandowski texted Wong, "I don't have them tomorrow."

66.    Wong responded, "So you don't need me Saturday then? You mentioned you may be in Hawaii with them? Correct?" Anthony responded, "Correct." (Exhibit 27). Wong wanted to meet with Levandowski to discuss the Alphabet lawsuit and other matters. She texted him at 1:40 p.m., "Do you have ten minutes to talk near ur (sic) work, before you leave today? I'm not far from 7th and Brannon, in potrero hill. After 6p.m. is preferred." Levandowski texted back, "OK after 6 p.m.is good." Wong responded, "Thanks I'll wait to hear from you, im (sic) printing emails and documents before I leave, so take ur time, thanks." Levandowski responded, "OK." (Exhibit 27)

67.    On March 2, 2017 Wong texted him, "Hey, I waited till 1209 a.m. and left. Today is Thursday, would you kindly put a deposit in account ending in 0331, thanks."

68.    Levandowski responded, "How much do I need to transfer?" (Exhibit 27) Wong responded, "We had an agreement that I would have a guaranteed minimum of 15 hours a week, correct? So for last thurs and Saturday that's 15 hours. It's not my fault you didn't need me, you can call me if you want to discuss."

69.    On Friday March 3, 2017 Wong asked Levandowski via text "I assume you are in Hawaii, I put a check for you in the mail to your home address." Anthony responded back via text,

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL: 415-801-4388

"O.K. thanks" (Exhibit 27). Wong sent a package out to Levandowski about the tax implications, wage increases, O.T. and "inappropriate" items found at home. (Exhibit 6, 7, 20)

70.     Wong asked Levandowski via text "Suzanna sent you Disney on ice tickets for four, if you are not using them tomorrow may I please use them?  Levandowski responded "Sent." (Exhibit 5, 27)

71.     On Wednesday March 8, 2017 at 7:19 a.m. Levandowski texted Wong "I am out of state."

72.     He texted Wong at 8:51 a.m., "I actually changed the lock so you can't get into the house." (Exhibit 27)

73.     Wong worked on Thursday, March 9, 2017 with Levandowski.  The front door lock previously had been a ten digit combination lock, the lock changed to a dead bolt key lock. Levandowski mentioned later to Wong that "only family members have the key to the house."

74.     Wong observed Levandowski looked extremely fatigued. His eyes were "blood shot." Levandowski did not appear to Wong he went out of state for a "vacation". Levandowski mentioned to Wong he had arrived from the airport before picking up the children at school. Levandowski left the house as usual after dinner.

75.     Wong texted Levandowski that night after dinner.  She said, "M.O.L. is calling for you."

76.     He responded, "Oh shit. Please wait before going in." At 10:57 p.m. Wong asked, "Are you 30 min away"

77.     Levandowski responded at 10:58 p.m. "Yes I'm at work in SF" She responded, "I'm wide awake working at the dining table" (Exhibit 4, 27).  Levandowski failed to pay Wong that evening. (Exhibit 3)

78.     On March 10, 2017 Wong asked Levandowski, Hi, do you have time to transfer before 5pm today? You missed the two Thursdays already, should we discuss tomorrow? I'm late in paying my bills and I don't like asking to be paid, it's really uncomfortable or me. Just call me if you have any questions, thanks." (Exhibit 27)

79.     Levandowski paid Wong late eighteen days late since her last payment. Wong was paid on March 13, 2017 (Exhibit 3).

STERLING LAW FIRM
6750 Street Drive
Palo Alto, CA. 95628
TEL. 415-851-4368

80.     On Friday March 10, 2017, Waymo requested the Federal Courts put a lidar ban on Uber's technology.

81.     On Saturday March 11, 2017 Levandowski called Wong on her phone (Exhibit 23), "I need you to come over asap." Levandowski texted Wong "Can you come at 4:30pm this evening? Wong responded, "Yes." (Exhibit 23,27)

82.     On Saturday March 11, 2017 several significant events occurred in Levandowski's home.

83.     That late afternoon, when Levandowski was away, Wong was in the kitchen for a period of time, the children were in Levandowski's bedroom. Half an hour later, she walked back to Levandowski's bedroom, Wong found his dresser drawer open and items on the floor, taken out by the children. The items were Levandowski's (Exhibit 20):

1) flesh colored dildo 10"

2) 30" elkhide flogger

3) nipple clamps, black with torture adjustable settings

4) silicone ball gag (black) with silicon strap

5) Fleischhauser's silicone ball gag (red) with garment leather strap

6) leather tan deluxe, thigh and wrist cuffs for ankle and thigh bondage

7) nylon black bondage rope 5mmx30 feet

8) Fleischhauer's custom dominatrix body lace harness with black florals and diamond studs in the center

9) Levandowski's black leather torso belt with rubber black butt plug apparatus

10) David Navarro "the strap" leather with silver links

11) bondage tape (red) low on supply

12)  kinklab bound-O-round 4 point restraint system (nylon)

13) kinklab black leather hog-tie plated with hardware claws, d-rings, and center o-ring for "instant submission"

14) Levandowski's black butt plug, plastic

15) Fleischhauer's blue butt plug, plastic

16) Fleischhauer's Bihua multi-speed waterproof therapeutic power vibrator (white and blue)

STERLING LAW FIRM
4750 Sunny Drive
Palo Alto, CA. 95628
TEL. 415-851-4368

17) ten speed wired powerful handheld wand vibrator massager with variable vibrator settings

18) grey vibrator handheld vibrator with black tip rotating/vibrating anus pleasure tip

19) softbound book: Bondage for Sex volume one-written by bondage author Chanta Rose containing erotic bondage shots.

20) leather deluxe dominatrix mask, half face masquerade with gold ceramic trimmings adorned with a gold horse with wings on each side, at center crown emblem

21) other unidentifiable sex bondage torture devices and straps

22) deluxe leather strap and chain torture devices

23) Fleischhauer's 3" black platform wedge dominatrix shoes, children's size with 7.5" spike heels with nylon lace up and dark silver shoe lace up and two gold 1"x1" buckles (Exhibit 50)

24) massage oil in pink twelve ounce container.

84.    Wong, immediately removed the Fleischhauer's blue butt plug item (Exhibit 20), a potential choking hazard from Mile's hand.

85.    Wong placed the blue butt plug in Levandowski's upper drawer, only to find Fleischhauser's blue bras and other young girls' clothing.

86.    Wong immediately distracted the children by turning on the television, and put the items back in Levandowski's lower dresser drawer.

87.    Levandowski texted Wong on March 11, 2017 at 5:56 p.m. "On my way, with my boss."

88.    Kalanick, along with Levandowski came back to the Berkeley residence around 6:30 p.m.

89.    Levandowski gave the package back to Wong (Exhibit 7), Levandowski stated to her, "I don't have time for this. I live here only two nights a week when my kids are here. I only get packages at Gabby's, Napa, San Francisco or in Palo Alto (Cowper) (Exhibit 8). Don't send me anything to this address."

90.    Wong observed Levandowski, upon entry had brought home the following items:

91.    A copper wiring device made up of roughly 60 intertwined individual copper wirings, wrapped in thick yellow rubber that had a serial number on it. There was also a large flat lid that had holes on all the edges, a large steel screw, and hexagonal steel washer (heavy, palm

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL 415-851-4384

size). Wong alleges the washer and screw are similar to those used on circuit boards, to keep from coming loose from "vibrations." Wong alleges the flat lid is similar to those used to "case" the lidar components on top of self-driving vehicles.

92.     There was also a circuit board embedded in the flat lid. Wong observed these items were fairly large and perhaps used for demonstration purposes to Kalanick (Exhibit 12). Wong noticed upon entry, Kalanick had a composition notebook in his hands.  Kalanick placed his notebook by his dinner plate on the dining table.

93.     Close to Kalanick and Levandowski, a white bucket that contained circuit boards, items related to circuit boards and various reflective lenses. Wong observed, the items in the bucket seemed fairly large and perhaps used for demonstration purposes to Kalanick.

94.     These four items were a main source of discussion between Travis Kalanick and Levandowski.

95.     There were also legal documents that were pending Levandowski's signature/verification.

96.     Later that evening, Wong picked up Kalanick's notebook by accident on the dining table.  She read Kalanick's notes in bold under "self-driving." Wong picked up verification forms by accident on Levandowski's ottoman. She put them back down when she realized it was not her legal paperwork or composition notebook from school.

97.     Kalanick left Levandowski's home around midnight. Kalanick stepped into the kitchen to grab bottled water upon exit, and Wong walked Kalanick out to the front door.

98.     On Thursday March 16, 2017 at 6:41 p.m. Levandowski texted Wong "O.K. if you are up for it and want to work, I'd love to have you over. If not, no worries."

99.     Wong responded, "ETA 8:50pm." Levandowki replied "Ok cool."

100.    On or about Thursday March 16, 2017 Randy Miller came over for dinner.  Wong asked Miller, "How do you know each other?" Miller responded, "We have known each other since college. We do a lot of business together, drones (Exhibit 58,59), virtual reality, lidar stuff, HVAC, real estate, and construction."

101.    Miller and Levandowski had discussions about the topics of drones (Exhibit 58, 59) and "microchips" for about several hours until 11:30 p.m. The names were discussed: Okan

STERLING LAW FIRM
4750 Stoney Drive
Palo Alto, CA. 93628
TEL. 415-651-4366

Arikan, Andrew Lookingbill, Chris Perry, Andy Hunt, Andy Gardner, Sean Askay, Phillip von Bieberstein, Rod Kendrick, and (Exhibit 24) Misha Leybovich (Exhibit 28).

102.   The names "Pat Green" and "Bender" were mentioned (Exhibit 39, 41). Wong assumed Miller and Levandowski were discussing employees/new hires of "Otto Trucking." Wong assumed Miller was an employee of Otto Trucking.  Miller left about 11:30 p.m.  Levandowski stepped out for the evening and came home about 2:30 a.m. Levandowski paid Wong that evening and received a Wells Fargo payment on March 17, 2017. (Exhibit 3)

103.   On Saturday March 18, 2017 Levandowski texted Wong "Want to come by tonight?"

104.    Wong responded, "Sure, what time, I just got home, in SF."

105.   Levandowski replied, "OK cool 6pm?"

106.   On Saturday March 18, Levandowski's parents were present, Musick and Stephen Levandowski were visiting from Napa (Exhibit 18, 27).

107.   Wong had dinner with Musick and Stephen Levandowski.  Later, Wong overheard the name "Hazlett" (Exhibit 40) and "Pat Green" (Exhibit 41) mentioned frequently in Anthony's discussion with his parents.

108.   Wong overheard Anthony Levandowski say to Musick, "Make sure Pat Green gets paid." The names mentioned were, Woelffle, Serge, Daniele de Pontheire, and Eric Allaer.  Large sums of money were associated with Levandowski's relatives/associates (Exhibit 24).

109.   The names Jean-Marc Boccart, Louis Whitcomb, and Tim McAdam were mentioned (Exhibit 24).  Anthony Levandowski left that evening to bring packages from Napa over to Fleischhauser's and have dinner (Exhibit 18).

110.   On March 19, 2017 Wong texted Levandowski. My feelings were hurt when A.O.L. addressed me in 'that manner' in front of Travis about making his dinner. I will not be staying Thursday night after we talk. Have u seen the movie Good Will Hunting?"

111.   Levandowski responded, "Ok thanks for letting me know. I'd like to know more about what exactly happened. No I haven't see the movie (Exhibit 27).

112.   On March 21, 2017 Wong sent a photo of a sidewalk robot to Levandowski.

STERLING LAW FIRM
4730 Steele Drive
Palo Alto, CA, 93628
TEL: 415-851-4366

113.    Levandowski replied, "Yo we forgot to talk drone (Exhibit 58, 59) and sidewalk robots." (Exhibit 27)

114.    On or about Thursday March 23, 2017 Musick texted Wong, "Hi, can you please call Stephen at 425-310-2350? (sic) (Exhibit 22) He's on his way to Anthony's and he has a question for you. It's about getting the door lock fixed. Thanks Suzanna."

115.     At 2:16 p.m. Wong texted Levandowski, "Hi, who's Stephen? Do you need me in Oakland for some errand? Thanks (Exhibit 27).

116.    Levandowski replied, "What do you mean who is Stephen?"

117.    Wong texted, "Ur dad I only know him as Steve, he just called me, I'm confused, he wants to talk to me but he said to not tell u (sic), I'm on Bryant street now, going to uber there, please clarify. But u (sic) never said anything to me. I'm not leaving the city till I hear from u (sic). I'm at 2nd and Brannan at a small coffee shop. Levandowski texted, "Ok cool. We're meeting Saturday not today right?"

118.    Wong texted, "Correct, you have to clarify w me in person how to deal with privacy issues with ur(sic) parents please, I don't know where u (sic) stand with that and you need to tell me…they asked me some questions and I didn't know how to answer this past sat. So ur (sic) dad knows I'm not coming right?? I'm not ready to talk to you today. (Exhibit 27)

119.    Wong called Steve Levandowski (Exhibit 57) but he did not pick up the phone. Wong tried to call Steve Levandowski back. She texted Musick.  (Exhibit 22, 27)

120.    Musick stated, "Thanks. He's driving and probably can't hear the phone. He'll call you back."

121.    Wong said "Should I head there to Oakland?"

122.    Musick said "If you're scheduled to be there, yes".

123.    Steve Levandowski called Wong back, and said, "We want to talk to you. I just wanted to let you know I am changing the locks on Anthony's bedroom door. You won't have access to the house anymore so don't take it personally. (Exhibit 23) We have some important items in his bedroom, but his bedroom will be open when you are there with the kids, don't take it personally." (Exhibit 23)

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL. 415-651-4388

124.    On March 24, 2017 at 1:55 p.m. Musick texted Wong, "Hi. I'm in Texas. Unless I'm forgetting something I don't know of any reason why we need to meet. Sorry for the confusion yesterday by giving you Stephen's wrong number! Hope you're doing well." (Exhibit 22)

125.    On Saturday March 25, 2017 Wong called Levandowski at 3:48 p.m. Levandowski called Wong, mentioned a "meeting", work for Wong was cancelled. (Exhibit 23).

126.    On March 26, 2017 Wong had not been paid her weekly wages.  Levandowski had failed to pay Wong three days prior. Wong texted Levandowski at 3:57 p.m., "We had an agreement that I would be paid once a week on Thursdays. We discussed this two months ago, talk tomorrow."

127.    "FYI can u transfer some grocery/ent (sic) money tonight, into the acct ending in 7983?  Thanks.

128.    Levandowski responded, "How much are you asking for?" Wong replied, "200, you asked me to tell you when it was under 100, your last deposit was 2.23.2017." Wong sent a screenshot of Levandowski's Wells Fargo account (Exhibit 27).

129.    Levandowski responded, "Just sent 200. Do you have the same thing for the other account? I am wondering why those transfers didn't go through." (Exhibit 27)

130.    Wong replied, "Well talk tomorrow, no deposits were made in my personal acct. I have surepay but they didn't go thru I think you deposited in someone else's acct."

131.    He replied, "Ok."

132.    On March 27, Wong wanted to meet with Levandowski.

133.    Levandowski texted Wong, "Ok, I am still in sf then will be attending a dinner then will call you and we can chat then." (Exhibit 27)

134.    Wong responded, "Ok". Wong waited for about five hours for Levandowski, he never showed up. She texted him at 10:04 p.m. "Please don't text me anymore." His response was "?" We just finished dinner, I'm still at work." Wong responded, "How late will you be there?" (Exhibit 27)

135.    Levandowski responded "Why don't we meet up tomorrow then. I have an opening during the day at 4:30 p.m." (Exhibit 27).

STERLING LAW FIRM
4750 Bryant Drive
Palo Alto, CA. 95628
TEL. 415-851-4368

136.   Wong responded, "I do not believe you will show up, how many no shows can I take? I'm speechless". Levandowski failed to pay Wong that week for her waiting time period.

137.   On March 28, 2017 Levandowski wrote, "We should never meet in Berkeley unless where meeting with the boys I am usually just there to sleep then head right back to work. If you're waiting, please call me to let me know. We didn't pick a time yesterday. 4:30 or 5 p.m. works for me to meet today, if that works for you. Ideally near Market street." (Exhibit 27)

138.   Wong responded, "All I ask is that you please consider what I have to say when we meet, I've never met a person like you who's says 'no' so many times before I complete a sentence. The last check you gave me was for 1350, I used most of this for a poster because I believed in this documentary."

139.   "FYI we agreed to meet in Berkeley after work at your home yesterday, you did not communicate with me clearly that this meeting would not take place, you agreed to change the situation to a 'call' which meant to me, you would call me after dinner to meet in Berkeley. I am not a doormat. I also waited for you last time in downtown for 4 hours prior to February 24, and I also waited for you till 1209am in the freezing dark downtown, 5 hours because you said you would meet with me after work. Are we meeting in Berkeley or downtown? (Exhibit 27)

140.   Wong replied, "Ok. I'll be there at 430pm today, if you are running late just text me. Do we have an office to meet in? Or do we have to find a coffee shop?" (Exhibit 27)

141.   Levandowski replied, "I don't have an office but we could meet at the Starbucks nearby."

142.   Wong texted Levandowski at 4:32 p.m. I'm at 1231 market, hotel whitcomb, there is a market street grill in the lobby and I'm at a private booth close to the piano, there are no surrounding tables, just beer left when you enter the restaurant."

143.   Levandowski texted "coming." (Exhibit 27) Wong saw Levandowski walking toward the hotel from the Uber building.

144.   Wong and Levandowski had a conversation at a restaurant table at the Whitcomb Hotel. Wong was upset that Levandowski had been sued by Alphabet and he had not discussed the consequences with her. Wong said, "I know you wouldn't do something like that, steal files." Levandowski did not respond.  Levandowski stayed silent and did not deny it.  He scowled, "Why

STERLING LAW FIRM
4750 Sunset Drive
Palm Desert, CA. 95628
TEL: 415-851-4388

are you hurting my family?" Wong was shocked at Levandowski's response. Wong asked Levandowski to clarify the relationships between his family members. Wong asked, "Do your parents know exactly what is going on? I thought it was weird that they were asking me all these questions about you." Levandowski replied, "Yes, they know, my parents have been helping me for a long time. You can answer anything they ask for from you." Wong asked, "So Gabby and Mike know what is going on to?" Levandowski replied, "Yes." Wong asked, "Stephanie and Ericka, do they know about your business stuff?" Levandowski replied, "Yes, they are helping me." Wong replied, "Ok, well I wasn't sure because you did not make that clear to me so if they ask anything of me I can answer, thanks."

145.    Wong said, "I made a short film on Sebastian Thrun, that could help your image." Levandowski shouted, "No! No! No! Don't make any films about me."  He also demanded that Wong not have social media of any sort. Wong expressed concerned, Levandowski's father Steve had requested a meeting via text a few days prior and Wong had no prior relationship with Levandowski's father. Wong, concerned, relayed to Levandowski that she did not know what Steve's "meeting" would be about. Steve had requested that Wong come out to Levandowski's home in Berkeley as Steve put a deadbolt key lock on Anthony's bedroom door on March 23, 2017. Wong asked about the wage increase/salary that was promised.  Levandowski said, "Yes, I will take care of it later." Levandowski also asked Wong about drones and technology. Wong replied, "I have a personal interest in them and I have read up on for some time. It's part of my education at school." Levandowski gave a shout at Wong, "Don't ask me questions about work, Ok, maybe drones (Exhibit 58, 59) but not about self-driving cars, you can't do anything on that subject!!" Wong was shocked by Levandowski's responses and remained silent.

146.    Wong wanted her back wages, waiting periods not paid for, overtime wages not paid etc.  Levandowski left the meeting "angry" at Wong. She wanted a document in writing from Levandowski. Wong had planned on quitting that day, she almost left Levandowski a movie poster as a parting gift. She did not receive her back wages. Wong stayed employed with Levandowski in hopes of getting what was promised to her by Musick and Levandowski before departing with Levandowski. Wong was not paid that week for her waiting period or meeting time. Levandowski also left the table without paying the bartender, leaving Wong the obligation to pay the tab.

STERLING LAW FIRM
4730 Street Drive
Palo Alto, CA, 93628
TEL: 415-851-4368

147.    An NDA was given to Wong electronically via her iphone on March 30, 2017. (Exhibit 27) Levandowski took the fifth amendment that day. Levandowski cancelled that work evening and texted Wong via phone. (Exhibit 27)

148.    On March 29, 2017 Wong texted Levandowski," Hi I am double checking that you do have the boys tomorrow, right? Because I will buy groceries in the morning, if not please inform me so I don't want to waste your money, thanks."

149.    Levandowski responded, "Ok, I don't know for sure. We should meet in am if you are free to meet up again. Thanks for checking in." (Exhibit 27)

150.    Wong responded, "Meet u near 1455 in am? Yes, you looked upset when you left (at Whitcomb Hotel) and then I realized I didn't clarify on some of the things you asked me on the spot, you do not want me to work for you anymore I assume. You asked me about drones." (Exhibit 58, 59)

151.    On March 30, 2017 at 10:44 a.m. Levandowski texted Wong. "I can't meet this am at 11. Are you free about later? At 10:44 a.m. he sent Wong an NDA agreement. Here's the childcare nda.

152.    At 2:21 p.m. Wong texted back, "I'm worried about taxes." (Exhibit 27)

153.    Levandowski responded back, "If you're worried about taxes just so and we can talk about it."

154.    Wong texted back, "Thanks, just taxes. But taxes are huge. Do you still have the circumstances still to meet tonight? At 7:29 p.m. Levandowski texted Wong, "No, sorry. Could do a call later."

155.    Wong wrote, "Let's just talk another time in person, I understand I want to head out to the theater to support my friends play, so see you tomorrow. Happy Emoji" (Exhibit 27).

156.    Levandowski responded, "Ok."

157.    On Friday March 31, 2017. Wong texted Levandowski, "Hi. I did not notice if you have a printer at home, but can you please copy the kids health insurance cards today or at work? Thanks.  She sent a screen shot of her Wells Fargo account, Wong had not been paid for two weeks. (Exhibit 27)

158.     Wong asked at 8:43 a.m, "Hi Anthony, Did you transfer 1380.00 yesterday? It did not go through and my tuition is due today. I am attempting to open a credit card this am, will discuss later, thanks. What time do you need me today? It's past noon.

159.     Levandowski replied, "I need the agreement mainly. I'll send the payment in a bit. It's been a very sm busy day." (Exhibit 27)

160.     Wong asked, "What time would I like me there? 5 or 6? Levandowski responded, "6/7 is fine, A.O.L. not feeling well I'm cooking at home. (Exhibit 27)

161.     Wong responded, "See the family at 6, thanks." He responded, "Perfect." (Exhibit 27)

162.     Wong reviewed the NDA, had a discussion with her attorney and did not want to sign the NDA. She stepped out of Levandowski's home. (Exhibit 27)

163.     She texted Levandowski at 7:45 p.m. "I'll be back in a few min, need some fresh air" He responded, "Ok.". Wong texted at 8:12 p.m., "I'm sorry I need a little more time, this conversation will not be easy for me."

164.     After dinner, Levandowski demanded Wong sign the NDA.

165.     Wong denied Levandowski's request. Wong saw errors in misclassification of her job title. Wong also saw the tax implications error that would hurt Levandowski's reputation if he had actually signed the document. Wong also asked for a separate work agreement apart from the NDA. Levandowski denied her request. Wong also requested the wage be documented in writing, as Levandowski had approved of a raise as promised in February 2017.  Wong had yet to receive the "wage increase." There were also overtime and back wages owed by Levandowski.

166.     Wong also recognized there were no liquidated damages clause, that sets forth a minimum amount for the breach. Wong did not want to sign a seriously flawed agreement, and in all fairness, thought by signing a flawed NDA document that it would hurt Levandowski's reputation as an engineer and employer.

167.     Wong immediately asked Levandowski to have his attorney, Miles Ehrlich, amend the NDA, but Levandowski stated "No".  Wong took notes on a legal pad for Levandowski to make the changes. Wong said, "Please make these changes." He yelled at her "No! I will not make the changes."

STERLING LAW FIRM
4750 Sunny Drive
Fair Oaks, CA 95628
TEL. 916-852-4388

168.    Wong took home the NDA Friday night, she refused to sign it that night.

169.    On Saturday April 1, 2017 Levandowski texted Wong, "Let's do 6pm tonight. We're going to spend the day in Napa with my dad." Wong alleges Musick was out of town.

170.    Wong responded, "Ok text me later if they have eaten and when you are home. I cannot get inside. Thanks.  Levandowski responded, "Ok." (Exhibit 27)

171.    Wong talked to Levandowski, that evening.  She wrote on a legal pad a few pages of the suggestion of changes that she wanted to have Ehrlich amend.  Levandowski again yelled at her several times, "No! No! No!" Wong said, "Please make the changes." Levandowski shouted at Wong, "No! No! You are making me nervous that you don't want to sign it." Wong replied, "I do not want to sign it.  I need my attorney to review the NDA.  I can bring it back next week. What's the big deal?  I've worked for you since December 2016?  I've been here four months and I don't know why waiting another week would be a big deal." Again, Levandowski yelled at her, "No! No! No!" Levandowski would not allow her to leave the premises unless she signed it. He also threatened to withhold her wages if she failed to sign it. Wong stated clearly "No." Anthony then started to scream at her "You have to sign it! Sign it!" Wong asked him to amend hourly to "salary", as he had promised her a "salary wage" plus overtime. The hourly portion was left blank. The month before they had an agreement where Wong would get paid a minimum of $750 per week (salary) plus ten additional hours for work, overtime, time for meal breaks, gas and mileage and he had repeatedly failed to document Wong as an employee.

172.    Wong asked about the tax implications for 2018, Levandowski said he would research the matter later but promised Wong that he would pay for the taxes in 2018 from the year 2017 if she had signed the NDA that evening. Anthony wrote on the NDA 1/1/2017. Wong argued with Levandowski, "That should say April 1, 2017, you sent the NDA to me on Thursday March 30, 2017 electronically.  Don't lie! You should not back-date a document, this is your fault for not providing one, from the first day of hire.  "No! No! No!" Levandowski shouted. Levandowski also promised Wong a meeting with Sebastian Thrun if she signed the NDA. Levandowski said he would not pay her wages owed and would not let her leave the house unless she signed it.

173.    Levandowski shouted at Wong, "Sign it!!!!"  He stomped his foot on the floor. Levandowski shouted at Wong, "Fuck, why won't you sign it!!!"  At this time Wong feared further

STERLING LAW FIRM
4750 Stuart Drive
Palm Oaks, CA, 95628
TEL: 916-856-4366

verbal retaliation from Levandowski.  Wong signed the document under "duress" of violence and retaliation, but she left the hourly wage blank. Levandowski also asked Wong to initialize the document, she did so against her will. She asked Levandowski for a copy that evening, he denied a copy to her. (Exhibit 27)

174.    The following week Wong had consulted her attorney and was informed the NDA was not enforceable, her attorney had not approved of the NDA.

175.    Over the next several months, Wong had requested that Levandowski amend the NDA, verbally and in writing, but he failed to do so. (Exhibit 27) There was a large white envelope in Levandowski's home with pre-paid postage so Levandowski could forward the amended NDA to Wong's attorney in Los Angeles. (Exhibit 54) Wong had repeatedly asked for a copy and Levandowski denied her a copy to date.  (Exhibit 27, 63)

176.    On April 3, 2017 Wong texted Musick, "Hi, are you back from Texas?" (Exhibit 22)

177.    On April 4, 2017 at 9:20 a.m. Musick responded "Hi. Just got back. What's up with you?"

178.    Wong asked," Ur in California all week?" Musick responded, "Yes and I had a very productive trip and good weather and no mosquitoes!" How is it going with you?"

179.    In April of 2017, Levandowski informed Wong that he would bring over "Fleischhauser" back to Levandowksi's home. Levandowski entered the door first, made the statement, to Wong "We need some privacy, we're gonna be busy. Levandowski winked at Wong."  Fleischhauser and Levandowski went to his bedroom.  The children were still sleeping next door.

180.    Levandowski agreed to a meeting but never met with Wong privately.

181.    On or about April 6, 2017 Randy Miller and Ognen Stojanvoski came over to Levandowski's for dinner and a business meeting. (Exhibit 47, 60)   Levandowski pointed to the white bucket full of circuit boards and related items, and made the statement to Miller and Stojanovski "Travis fell for the props, he doesn't know shit." She also heard that Levandowski's relationships at UBER were going downhill and he had no plans for cooperating with UBER. The names "Andy Hunt", "Forrest Gardner" "Brian Salesky" and "Peter Rander" were mentioned.

STERLING LAW FIRM
4750 Street Drive
Palm Drive, CA, 93628
TEL: 514-851-4388

(Exhibit 44).   Stojanovski stated, "We need to get more engineers that left Google two or three years ago."

182.   Levandowski wrote on a large brown piece of paper "n" and used blue tape to place on the glass window in the living room close to dining table where Miller, Levandowski, and Stojanovski were sitting.  The "n" had a square around it, with the edges rounded out. An arrow at the bottom of the "n" was pointing to the right. (Exhibit 47) Wong alleges the "n" was in reference to "N-type semiconductors". Wong alleges the right "arrow" referred to the electronic symbol for the solid-state diode. (Exhibit 47) They discussed "microchips", "circuit boards", "diodes", and "reflective surfaces". They discussed Stojanovski drafting up new contracts and patents with "Bender." (Exhibit 19) The names "Qing Lu", "Hall", and "Mike Jellen", "DJI" were discussed (Exhibit 24, 44). They discussed updates from Tesla's electric trucking division. The name "Pat Green" was mentioned (Exhibit 41). Wong believed based on their conversation that Miller and Stojanvoksi were employees of Otto Trucking and recruiting new employees for OTTO Trucking in Isreal, Europe and Asia.  The meeting lasted for several hours.  Miller and Stojanovski stayed until 11:30 p.m.  Levandowski left the house and returned about a few hours later. Wong noticed the Claremont badge upon his return, Levandowski left the "Claremont" badge by the front door (Exhibit 12).

183.   In April 2017, Wong was very uncomfortable, concerned about "inappropriate items" found on around the house and safety hazards to the kids. (Exhibit 6, 20, 27).

184.   On or about April 8, 2017, Wong had noticed dominatrix boots (Exhibit 46) visible in Anthony's home. Wong had texted Levandowski to inquire who the children's' boots belonged to. Wong asked "Is Gabby or Suzanna here?" Levandowski replied, "No why?" Wong's response was, "I see girls boots here." Levandowski replied "Lol, it's my GF's but she's not here. (Exhibit 27)

185.   On April 8, 2017 around midnight M.O.L. called for "Daddy" Levandowski several times during the night. Levandowski specifically requested that Wong (via text) ignore M.O.L. crying. Levandowski instructed Wong to ignore M.O.L. repeatedly.   Anthony Levandowski returned several hours later. (Exhibit 27)

STERLING LAW FIRM
4750 Stacey Drive
Palo Alto, CA 95628
TEL 415-851-4366

186.    Wong believes that parental instruction to ignore M.O.L.' cries and wails is neglectful.

187.    On April 10, 2017 Wong texted Levandowski, "I would suggest you put your GF boots in a bag out of sight". Anthony responded via text, "Got it, thanks". (Exhibit 27) Levandowski threw out the black boots and girls' bra (Exhibit 46).

188.    On Thursday April 13, 2017 Wong worked with Levandowski. He failed to pay Wong that evening. (Exhibit 3)

189.    On April 14, 2017 Wong requested her usual pay of $750 to Levandowski. (Exhibit 27) He refused to pay Wong.  He paid her late on April 21, 2017 in the late evening. (Exhibit 3)

190.    On Saturday April 15, 2017 Wong texted Levandowski, "What time 6pm?" He responded, "Let's do 7:30p.m." Levandowski texted Wong at 4:45 p.m., "We're still in Napa." At 6:39 p.m. Levandowski texted Wong "We're still in Napa FYI". At 8:05 p.m. Levandowski texted "On our way back."

191.    At 9:46 p.m. Levandowski texted Wong, "I'm home kids are asleep? Where are you? Are you coming? Up to you?"

192.    Wong responded, at 9:47 p.m. "Can you unlock the door please? Yeah been waiting to hear from u (sic).  Be there in 2 min.  Do you need me tonight? Are you stepping out?" (Exhibit 27)

193.    Levandowski responded at 10:06 p.m. "I'll head out soon, if that's ok".

194.    On April 17, 2017 Wong texted Levandowski, "Hi, you put 750 in the wrong account last week, would you mind trying again, it's the account ending in 0331 feel free to call me if you have any questions." Wong received a late payment on April 21, 2017. (Exhibit 3)

195.    Levandowski retaliated, "No" (Exhibit 27).

196.    Wong texted him, "We need to talk Thursday night, thanks. It's not my fault you put it in the wrong account, I specified it was acct 0331."

197.    Levandowski responded, "I sent the funds. Just to clarify you didn't specify the account when you did ask last time. You could also just transfer from one to the other. They are both your accounts…" (Exhibit 27)

STERLING LAW FIRM
4750 Shasta Drive
Palo Alto, CA, 95628
TEL: 313-863-4388

198.   Wong responded, "I don't want to confuse the two accounts-the other ending in 7983 is for your household purchases, if I transferred it you could one day say I "stole" the funds. I want to avoid that. I see things from a legal perspective so I am sorry if I am on the defense with caution." (Exhibit 27)

199.   On Saturday April 22, 2017 Levandowski texted Wong "Still looking good for seeing you around 9p.m.?" Wong responded "I will be there sooner. I'll text u once I get on Bart, my flight comes in at 750 at sfo and I will take Bart right over, if I get on an earlier flight I will inform you. Levandowski responded, "OK." At 9:41 p.m. Wong texted Levandowski "You left at 940p.m.?"  Levandowski responded, "On our way back from Napa" (Exhibit 27).

200.   On or about April 22, 2017, M.O.L. had cried for Levandowski repeatedly during the night.  Levandowski failed to return Wong's text message, Levandowski did not respond to Wong for several hours.  The parental neglect constantly left Wong in an emotional state of distress.

201.   During Wong's employment with Levandowski, Wong read one of Levandowski's books "Get Shit Done" at his residence. (Exhibit 15)  She wrote down the title of the book and the page numbers that Levandowski had noted. On page five of the book, pictures of a stack of coins, says "SELL." On another page it read "Less Meetings, more doing." (Exhibit 15) Wong also read Peter Thiel's book from 2014, "Zero to One" at Levandowski's residence, some pages were noted by Levandowski.

202.   On April 23, 2017 Wong again requested to Levandowski to please speak to Wong about important matters, taxes, documentation, revised NDA, etc.  Again, Levandowski failed to respond.

203.   On April 26. 2017 Levandowski texted Wong, "I will not be going in Napa this weekend".

204.   On April 27, 2017 Levandowski was removed as ATG Lead.

205.   Wong texted Levandowski at 5:10 p.m., "Hi am I making dinner tonight?" He responds, "No." (Exhibit 27)

206.   Wong googled on her phone before arriving at Levandowski's.  She read Levandowski had been removed as ATG lead.  Mike Levandowski came over for dinner and an

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL: 415-651-4366

evening meeting (Exhibit 27).   Wong overheard, the brothers discuss liquidating Anthony Levandowski's "assets."  The names "John", "Miles Ehrlich", "Bender" were mentioned.  Wong heard Anthony Levandowski state that his relationships at UBER had gone downhill.  Anthony Levandowski asked his brother Mike to keep "paying off" Haslim and others.  Anthony made reference to the "Lior" and "Sameer". They planned to recruit UBER engineers using middle persons and current contacts for their own "lidar gigs."

207.    Anthony Levandowski planned on continuing sales of "the shit" overseas using third party members to get updates/advances only for Levandowski's benefit/delay progress at UBER in San Francisco/Pittsburgh (Exhibit 24).  Anthony and Mike planned to use their relatives from Europe to start companies in the Bay Area to compete with autonomous driving.  Anthony Levandowski planned to "recruit" and "regroup" with engineers the following weekend in Tahoe. Ognen Stojanovski and "Bender" would help with lidar sales, contracts, and patents, along with "John", overseas in France, China and other countries.

208.   Gabby Levandowski (Exhibit 36, 57), Adriana Levandowski (Exhibit 10, 45), Maxime Levandowski (Exhibit 37) and Fleischhauer (Exhibit 9) would continue to facilitate with package and cash transactions.  Anthony planned to get updates from a "Patrick Green" (Exhibit 41), on Tesla trucking, their non-lidar technology and "Nvidia chips".   Under the direction of Gardner, Musick and Steve Levandowski continued to travel, liquidate assets as much as possible. The names Woelffle (Exhibit 34, 57), G. Serge (Exhibit 24), Allaer (Exhibit 31), (Exhibit 24) Maati (Exhibit 37), Hazlett (Exhibit 40), and relatives overseas were discussed between the brothers. (Exhibit 24, 37).

209.    Anthony Levandowski, Miller and Ognen (Exhibit 39) planned on the hardware and software aspect by hiring more engineers from Google and DARPA with the help from "John." The new plan, Levandowski stated, "was to hire from Google employees and Pittsburgh that left around 2014/2015, based on his lawyers' direction".

210.    Levandowski's relatives planned cash and assets transfers in other states and countries and purchases of expensive real estate that could be resold/transferred at a later time. The immediate family members or associates mentioned that evening were Maureen Bender Levandowski (Exhibit 10), Adriana Levandowski (Exhibit 45), Gabby Levandowski (Exhibit 36)

STERLING LAW FIRM
4750 Street Drive
Palk Suite, CA 95628
TEL: 916-851-4368

, Richard Bender Levandowski, Maxime Levandowski (Exhibit 10), Boyds (Exhibit 37), Debbie Carson (Exhibit 57) Levandowski, Mina Maati (Exhibit 37), Charline Maati, Sylvie Woelffle (Exhibit 24, 57) (Levandowski's birthmother), G. Serge, Andre Muller, Daniele de Ponthiere, a relative name H. Lynn Hazlett aka Helen Hazlett (Exhibit 40), and Marianne Despopoulous Hazlett(Exhibit 57), and Eric Allaer (Exhibit 34, 27, 37).  Musick would also siphon money to her sister Oleta McGrath in Texas (Exhibit 24).  Ehrlich and John Gardner would facilitate with the exact monetary sums transfers and cash payouts.

211.    Levandowski stated, "Gardner planned to disperse funds in joint ventures in the East bay, San Francisco, East Coast, North Carolina, Georgia and other countries. Wong overheard the names "Andy Gardner," "Andy Hunt" (Exhibit 24) and "Stephanie Olsen."  The name "Jean-Marc Boccart" was mentioned (Exhibit 24).

212.    The brothers also discussed that Anthony would be "fleeing" at some point as a fugitive by driving up to Alberta, Canada (Exhibit 42).  Levandowski made the statement, "I'm not going to prison, fuck this. Gabby, Max, Adrienne (Adriana) have a copy, Ericka can travel this summer. I'm still selling and making money wherever "John" places me.  Anthony Levandowski arranged for the children to still be able to visit him through Olsen and relatives, under the supervision of his lawyers.

213.    Mike Levandowski said, "We can make Redwood City, Berkeley and Texas a future contact point for meetings and packages received."  Anthony said to Mike Levandowski, "Just arrange with Suzanna, dad, and Hazlett (Exhibit 40) to keep working with Pat Green (Exhibit 41).  I need updates on Tesla trucking, the non-lidar technology is crucial and Nvidia chips. We can make money on both."  Wong heard Anthony make the statement, "We can get more programmers here, cash works.  We can hire within UBER from Pittsburgh and hold back advances in Otto Trucking.  Fuck Travis!  Fuck UBER!"

214.    Wong left Levandowski's home that evening and took an UBER ride home (Exhibit 2). Levandowski paid Wong that evening, and received her wages April 28, 2017 (Exhibit 3).

215.    Wong observed during the months of April/May 2017, she noticed a large, dark colored pickup truck.  The vehicle had a ram and horns as an emblem on the front of the truck. Levandowski told Wong he wanted to sell the truck.  The large truck sat in his driveway in April

and was sitting there for several weeks. Wong asked Levandowski frequently in May, "Do you want me to sell your truck for you?  There is no "for sale" sign and your truck won't sell sitting in your driveway.  I can put it on the streets in San Francisco and it can sell faster."  He responded rudely, "No!" The vehicle, Wong believes was perhaps transferred to a friend, relative, or middleperson before Levandowski was fired by UBER. Wong alleges this was a possible get-a-way vehicle for Levandowski's plan to abscond to Canada etc. Wong believes, based on Levandowski's phone conversations, he already had a new passport given to him by his birth mother Sylvie Woelffle.

216.   Levandowski frequently visited his parents in Napa on the weekend to pick up packages and black suitcases.  According to M.O.L. (4), the large amounts of cash were transferred to Olsen's home periodically by Levandowski when he went to Olsen's home weekly to pick up and drop off the children.  Olsen's and Levandowski's normal routine prior to February 23, 2017 was Levandowski picked the children up at their French/American school on Thursday afternoons, drop them off to school Friday morning.  On Saturday mornings, Levandowski would pick up the children at Olsen's home at 10:00 a.m. at 2917 Ashby, and drop them off Sunday morning at Olsen's around 10 a.m. Wong recalled Anthony stated to Wong in January 2017, he was or a relative was coming back with the kids in Napa on Saturday. After February 23, 2017, Anthony went to Napa almost every Saturday with the children and returned in the early evening. Levandowski would put the children to bed. Levandowski would attempt to leave the house close to 8:00 p.m.  Some evenings, Levandowski stayed at home until 11:30 p.m.  Levandowski was on his phone frequently with engineers and lawyers.  Wong noticed a lot of scheming going on. Another business meeting took place in April/May 2017 between Anthony Levandowski, Mike Levandowski, Musick and Steve Levandowski, Wong observed a lot of "shouting", relatives names mentioned (Exhibit 24, 40) regarding large amounts of money.  Wong assumed the names she heard were employees of "Otto Trucking." During this meeting, Musick asked Mike Levandowski "How were the new facilities in Pittsburgh?" Mike Levandowski responded, "It's really awesome, fantastic." Wong assumed Mike Levandowski was referring to "new facilities" to Uber in Pittsburgh.   Anthony Levandowski at times, left the home close to midnight and would

STERLING LAW FIRM
4750 Street Drive,
Palo Alto, CA, 95628
TEL 313-852-4288

return a few hours later. Wong stayed outside the children's bedroom in silence or low volume with her "earphones on."

217.    After February 23, 2017 Levandowski bathed the children in the evening less frequently or not at all. Fleischhauser slept over at Levandowski's more frequently in April on Wong's non-work days, Fleischhauser left receipts and certain vegetarian foods in Levandowski's refrigerator.

218.    Wong also noted a two-door car, older model Lexus model SC400, with license plate 3JIF983 (Exhibit 25) that was sitting in Levandowski's driveway parked since the April 2017, around the time Levandowski was removed as ATG lead. The vehicle SC400 Lexus sat in Levandowski's driveway for several weeks.   Wong alleges Fleischhauser or a female relative/friend went overseas. Wong also noticed white buckets of circuit boards that Levandowski would bring home after his late-night meetings.  The house was simplified dramatically, items and boxes of toys were being thrown out.  The "Nest" thermostat was removed in May 2017.

219.    During the month of May and June 2017, Wong drove by over a dozen times regularly in the early morning and evening at Levandowski's Cowper properties (Exhibit 8, 13). She noticed "Indian" residents were living there, at least two males, perhaps another female or male. She noted the license plates (Exhibit 13) and believes they lived at the Cowper property, they walked out the house after 8 a.m. (Exhibit 25) and returned home late.  The license plates were a white Toyota 5TPC797, a silver Lexus 6KWS778, an older model gold Toyota Rav4 7YKV457. Wong drove by at midnight after school on consecutive nights and noticed the same vehicles parked outside the house (Exhibit 25).  Wong also drove by the Dwight Way properties several times (Exhibit 26).

220.    Levandowski had mentioned to Wong on multiple times during her employment "I'm heading to Cowper." In late April/May 2017, shortly before Levandowski got fired from UBER, Wong noticed a file on Levandowski's desk, unsigned NDA contracts. Wong alleges these documents were prepared by Ehrlich to recruit new engineers within UBER and other self-driving companies in the Bay Area, without the consent of executives/lawyers at UBER or Kalanick.

221.    During the month of April, Levandowski gave "loud shouts" to Wong more frequently.

STERLING LAW FIRM
4750 Stuart Drive
Palo Alto, CA 95628
TEL. 315-851-4384

222.    On or about Saturday April 29, 2017. Wong worked with Levandowski (Exhibit 29). On Levandowski's work desk were manila folders. In one, she found a photo of Fleishhauser, naked, bound in red tape, with a red gag ball in her mouth (Exhibit 6, Exhibit 9, Exhibit 20).

223.    On or about Saturday, April 29, 2017 Levandowski slammed the windows and doors in his home.  He started to shout, "Fuck Eric! Fuck UBER!" He also gave a shout at Wong about items in his home. "I don't want you to buy stuff for the kids anymore, Fuck this!!" "Don't buy bottled water! What's the matter with you!!!" Wong left the house emotionally distressed from Levandowski's "schemes".  Wong observed Levandowski was shouting and cursing all night on the phone, with his lawyers.

224.    On April 30, 2017, Wong texted Levandowski, "Would it help if u text me before u come home and I can close the windows? Or does having the windows open affect nest? Please clarify with me on Thursday. Wong texted Levandowski, "I wanted to talk to you about some items you said on Thursday I could meet with you after you dropped off the kids tomorrow."

225.    Levandowski responded, "Let's talk Thursday." (Exhibit 27)

226.    Wong asked Levandowski, "The next time you order from Amazon can U please get one half inch blue tape and one inch blue tape please, thank you."

227.    Levandowski wrote, "OK, I get that from Home Depot not amazon."

228.    Wong asked, "Why does one tape have tan print on it? Others are plain blue". Levandowski wrote, "What do you mean?"

229.    Wong wrote, "There's one tape roll in the drawer that has tan writing on it." Levandowski wrote, "Why do you want to know this?" (Exhibit 27)

230.    Wong responded, "Please don't yell at me in your home. Or over the phone. I'm sorry you're going through a lot." (Exhibit 27).  Wong alleges Levandowski assumed Wong found Levandowski's red bondage tape used on Fleischhauser in Levandowski's bedroom drawer (Exhibit 6).

231.    On April 30, 2017 Wong asked Musick if she was interested in watching Monsoon Wedding at the Berkeley Theater.  Musick replied "Thanks for the invite but we are traveling a lot over the summer starting in May.  Let me know when you're going up this way and if I'm around I'll try and meet up with you (Exhibit 22).

STERLING LAW FIRM
4750 Stanley Drive
Palo Alto, CA 95628
TEL: 315-851-4384

232. On April 30, 2017 Levandowski texted Wong, "I think we may be going to Tahoe that weekend." Wong responded, "So you won't need me Saturday" Levandowski answered, "Correct." (Exhibit 27)

233. On Thursday May 4, 2017 Levandowski canceled the work day with Wong. He texted her at 5:48 p.m. "Hey let's cancel today. I'll send the money anyway."

234. Wong responded back, "Please take the trunks and sunglasses to tahoe, on the bin outside." (Exhibit 27)

235. On Friday May 5, 2017 Wong texted Levandowski, "Hi I am just double checking that ur plans did not change for tomorrow, you don't need help then, correct?" Levandowski replied, "Correct."

236. On Monday May 8, 2017 Anthony took a screen shot at his residence on Chabot, it was of swimming trunks for the boys. Levandowski asked "Did you buy this stuff for the boys? Let's return it and not buy stuff unless we are in agreement. Seeing stuff pop up at my house randomly is not good. I'm trying to slim down and get to a minimalist setup. Especially since the house is looking more like a hoarder house right now." (Exhibit 27, 60)

237. At 8:12 p.m. Levandowski texted "Also forgot to mention I'll have the kids Wednesday this week and next."

238. On Wednesday May 10, 2017 Levandowski texted "Confirming you're not coming today? If you're sick don't worry about it."

239. On Saturday May 13, 2017 at 6:42 p.m. Wong texted Levandowski "I'm feeling better, would you like some help this evening? I'm in the area. If you need some space, see you Wed? I will leave a private letter for you at the front door. Just call me if you need help."

240. Levandowski responded at 7:15 p.m." Ok, thanks for dropping it off. I didn't plan on having you today since you wanted to take this week off."

241. Wong drove by the Levandowski house and noticed a cream/beige Tesla in Levandowski's driveway. The license plate read "Pittsburgh." Since Levandowski's relationships at Uber were soured, Wong alleges the vehicle belonged to a family member. There was also the dark colored Lexus, SC400 model, license plate 3JIF983 (Exhibit 25) that was still sitting in Levandowski's driveway, the vehicle had been siting there for several weeks. Wong alleges the

STERLING LAW FIRM
4750 Street Drive
Park Slate, CA, 95628
TEL: 415-851-4386

two-door Lexus was owned by a female based on the Lexus body type.   Wong believes Fleishhauser (Exhibit 9), Adriana Levandowski (Exhibit 10), or Gabby Levandowski (Exhibit 36) went overseas.

242.   On Sunday May 14, 2017 Wong sent Levandowski a text, "I saw a different car in your driveway (Exhibit 25) and it appears you may have a guest. I left the letter for you between your trash bin and recycling bin on the floor outside, I did not know which mailbox was yours so I left it outside, please put it back when ur(sic) done and I'll pick it up later, it's private, thanks. I would not like anyone else to read."

243.   Levandowski responded, "Ok, I'll check, those aren't my bins. That explains why." Wong noticed the gift of a children's magnetic sandbox had been thrown away in Levandowski's trash bin.

244.   On Monday, May 15, 2017 Wong texted Levandowski asking why he threw out Wong's gift to the children.  He responded, "Thank you for the gift, I appreciate it, but the sand was no longer "magnetic" and it was getting everywhere.  I also must add that I'm not comfortable with you going through my stuff or trash.  Please don't come by the house (and/or go through my stuff) unless we agree beforehand."

245.   Wong responded, "I was not going through your trash, I was looking for my pad which I asked you to leave outside yesterday. Gee whiz, I did not see it so I checked the trash, to look for my pad, gee whiz" (Exhibit 27).

246.   On Thursday May 18, 2017 at 1:08 p.m.  Levandowski texted to Wong "I had the boys last night and will be in Napa this weekend, but let's talk about next week if you're interested" (Exhibit 27).

247.   On May 23, 2017, Kent Walker, SVP and General Counsel gave a lecture on "Antitrust" at Stanford Law School. Wong approached Walker showing him Levandowski's January 2017 checks with Musick's Napa address and said, "I know something about Levandowski." Walker gave Wong his email at Google.

248.   On May 24, 2017 at 2:40 p.m. Levandowski texted Wong, "Ok we're on for tomorrow" (Exhibit 27).

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA. 93628
TEL. 415-851-4368

249.    On Thursday May 25, 2017 Wong heard Levandowski say, "Eric is pissing me off, he's taking all my money, I want him dead." (Exhibit 32).  Levandowski stormed out of the house that evening.  Wong assumed "Eric" was "Eric Meyhofer" of UBER.  She saw a package on Levandowski's desk.  Wong pulled out two maps, one of France and Belgium.  On the Belgium map, the Liege Airport was highlighted in yellow.  The town of Villers-le-Bouillet was highlighted in yellow.  Wong recycled her three newspapers in Levandowski's recycling bin.  She found larger package/envelopes from "Maureen Bender."  The smaller package was from "Google."  There was also a small package from "Tesla" that had no postage on it.  Wong believes the Tesla package was hand delivered to Levandowski.  Wong frequently heard Levandowski on the phone ask for "Mike Jellen" and "Bender."  Wong overheard Levandowski had frequent meetings with "Mike Jellen."

250.    Wong noticed during that month Levandowski had a new Macbook pro and Dell computer on his bed, they were wrapped in boxes, unopened.  Wong believes Levandowski's personal computer devices went to his parents' house the weekend prior or after Levandowski's firing from UBER.

251.    On or about May 26, 2017 Levandowski was fired by UBER.  The announcement was not made public until Tuesday May 30, 2017.

252.    On Thursday May 25, 2017, Wong did not receive her wages.  Wong requested her wages May 28, 2017 but faced retaliation from Levandowski.  He was already three days late of payment. (Exhibit 3, 27)

253.    On Saturday May 27, 2017 Wong showed up for work in Berkeley.  Levandowski failed to show up.  At 6:19 p.m. he texted her, "We're still in Napa, thought we were talking before you came."  At 8:31 p.m. Levandowski texted Wong, "OK, looks like we might spend the night up here." (Exhibit 27)

254.    Wong noticed the SC400 Lexus in Levandowski's driveway (Exhibit 25), it had been parked there for several weeks already, in place of where the large four door truck previously was parked.

255.    On or about Sunday June 4, 2017 Levandowski met Wong for less than an hour in his home on Chabot.  Wong asked for a work agreement and amended NDA, he responded "I don't have access to the NDA now."  Wong repeatedly asked for months for Anthony to amend the NDA

which she never received a copy of. She also asked for her back wages owed. Levandowski refused. (Exhibit 27, 63) . Wong stated, "You never provided a copy and we agreed to a "salary", I am waiting for the raise that was promised to me and the wages owed to me. I have read about workers compensation and what you did isn't right.  Levandowski stated to her "I can pay a Mexican or Indian for less. I can hire somebody younger." Wong said to Levandowski "I have a lawyer, I spent so much on lawyer's fees and you didn't protect me and my rights as a worker. I've been employed over seven months now and I am not documented. You promised me you would pay the taxes for 2017 in 2018 if I signed the NDA and I wanted an "agreement" in writing. You also said I could meet Sebastian Thrun if I signed the NDA." Levandowski responded, "I am simplifying my life, I am not going to prison, so please don't buy any more clothes or books for the kids. Can you return the children books you bought? Sorry."

256.   During the months of May 2017 and June 2017, Wong heard Levandowski make phone calls about selling "more shit" overseas. Levandowski asked frequently from Gabby, "Did you get any packages from "Google" or "Pat Green?"  Wong also overheard Levandowksi make the statement to John Gardner "The Fed Ex packages from Google, I gave them to you, let's discuss","I want to make sure the contracts say our contract work must supersede their work at Google", "Let's wait two terms before selling, the parts will be cheaper then."

257.   "The names heard by Wong were Phillip von Bieberstein Andy Hunt/Andrew Gardner, Chris Perry, Sean Askay and Rod Kendrick. Levandowski mentioned, "Did you give cash to Belle Walker and Joe Traverso (Zynga)?"  In one phone conversation, Wong heard Levandowski talk about a person named "Ryan Eustice." "Seth Teller's" name was associated to a "Daniela Rus".  Rus was associated with the same university as Seth Teller. Wong believes that Levandowski may have used Tellers personal information for his monetary benefit by using his passport ID or social security number, a possible shared gmail account with other engineers. Levandowski then mentioned the name "Noa Epstein" (Exhibit 28) "Colleen Russell" (Exhibit 28) and "Inna Belkin" (Exhibit 28).  Levandowski canceled work for Wong on Thursday June 1, Saturday June 3, Thursday June 8 and Saturday June 10, 2017.  Wong alleges Levandowski may have left the Bay Area during that time.

258.    On June 3, 2017 Wong called Levandowski, "Are you here, I am here to work." He replied, I am not in Berkeley, I am "working." Wong said, "What do you mean by work? You don't work FOR UBER anymore." Levandowksi replied, "I don't plan on going to prison, the money is in the chip sales."

259.    On June 4, 2017 Levandowski met with Wong in his home. (Exhibit 63) The meeting was meant to be an hour, Levandowski only gave her about fifteen minutes. Levandowski made it clear to Wong that he was simplifying his life. She no longer needed to buy groceries, he refused to put money in the grocery account any more. He told Wong Levandowski would only eat pasta and sauce.

260.    In June, Wong saw packages from "Google" in Levandowski's recycling bin.  In May/June 2017 Levandowski ordered Wong a ride back to San Francisco late in the evening. Wong expected an UBER driver but got a LYFT driver instead. Wong noticed an outdated photo of Levandowski on the phone screen of the Lyft driver (Exhibit 29).

261.    On or about June 15, 2017 Wong noticed lawn chairs in the backyard were moved out of their usual setting. The chairs were set up in a meeting style in a "C" shape and the grilled smelled of recent BBQ. Wong believes based on Levandowski's phone conversations, and the unsigned NDAs seen in Levandowksi's home, Levandowski had meetings to recruit new employees within UBER and Google for Lidar other based start-ups or those such as Argo A.I. in Pittsburgh.

262.    On Thursday June 15, 2017, Wong overhead Levandowski say "Phillip von Bieberstein needs cash."   The names "Louis Whitcomb, Andrea Censi, Misha Lebovich, Sean Askay, Rod Kendrick, Rich Waters, Okan Arikan, Andrew Lookingbil, Charles Justice" were also heard later in phone conversations that evening (Exhibit 28).

263.    Wong walked in to Anthony's bedroom to pick up an item from his desk, and Wong overhead Levandowski on his cell phone. "Eric is dead, that asshole deserved it." (Exhibit 31) Anthony shouted at Wong, "Did you hear me?" Wong said, "no." Wong ran outside his home. Wong assumed "Eric" was "Eric Meyhofer" of UBER. Levandowski followed her and shouted at Wong, "Did you hear what I said? Why did you walk in like that without warning me?" Wong replied, "Your bedroom door is always open, I told you I was coming in, but you didn't hear me,

STERLING LAW FIRM
4750 Sunny Drive
Palo Alto, CA, 95628
TEL. 415-851-4386

I didn't know you were on the telephone, sorry." He shouted at her, "Don't ever come in like that again!"

264.    She replied, "The doors are always open in the house, it is hard to not hear you. I am sitting directly outside your bedroom. You talk really loud in the living room too, it's not my fault." Levandowski rolled his eyes and he walked back into his house.

265.    Later that evening, Levandowski stepped out. Wong asked M.O.L.  (3) "Where is the cash?" Wong showed M.O.L. a twenty-dollar bill and a one-hundred-dollar bill. She asked, "What kind of dollar bills are in the suitcases?" M.O.L. pointed to the one-hundred-dollar bill.

266.    M.O.L. said, "The money, it's in daddy's closet." Wong opened the closet and a large black suitcase fell over and bumped M.O.L. on the head. The suitcase opened and contained human torture devices.  There were photos of female teenagers in compromising positions bound up in rope and red tape.  Some of the teenagers were bruised in the face and torso area.  The photos were dated back to 2012 with a "sharpie" pen.  Wong closed the suitcase and put M.O.L. back to bed.

267.    On Friday June 16, 2017 Wong texted Levandowski, "Thanks. It's a business day. Are you able to send a copy of the nda? Thanks, my email is xxxxxxwong@gmail.com. It's been ten weeks.

268.    Levandowski, responded at 1:28 p.m. "I don't have it need to dig it up." (Exhibit 27)

269.    On or about Saturday June 17, 2017, Wong attended the Stanford Law School graduation. She overheard Levandowski on the phone mention the name "David Hall" "Mike Jellen" and "Bob Brown" Levandowski said, "I'm rich as fuck. Boom-mother fucker! Fuck Travis! Fuck UBER! I'm taking the world over with all these deals, microchips sales all over the world." Levandowski left the house after dinner.

270.    In the evening, she recycled her newspapers and a few SLS commencement program materials in Levandowski's recycling bin. Wong noticed the map of "Belgium" had been thrown out.

STERLING LAW FIRM
4750 Statter Drive
Palo Alto, CA, 95628
TEL. 415-851-4388

271.    Wong believes the following based on her observations of Levandowski and his conversations in Levandowski's home during her employment, and extensive internet research into these matters:

272.    Levandowski already had created new lidar start-ups using the trade secrets stolen from Google for his own monetary benefit using middle persons rather than himself, prior to his employment with UBER/Otto Trucking.  Levandowski may have created ARGO A.I.,   with the help of Ehrlich, Gardner, Mike Levandowski, Bender, Stojanvoski, Hall, and Miller.  (Exhibit 39) Levandowski used his immediate family members to create shell companies to launder money and evade taxes from the profits.  Maxime (Exhibit 39) and Adriana Levandowski (Exhibit 45) were perhaps in the Bay Area during Wong's employment, but recently changed their online profile to "appear" in other locations. Adriana, Gabby and Maxime Levandowski (Exhibit 39) worked in part time jobs or created work situations for "self-employment" that included travel to France, Belgium, and the UK a few years prior to December 2015.  Levandowski, Miller, Bender, Stojanovski, Ehrlich, Gardner and other attorneys were working together to create new patents (lidar) in exchange for licensing the technology with automobile companies through "new lidar start-ups" to compete with UBER, Tesla and Waymo.  Levandowski's trade secret theft from Google was a pre-calculated theft, and the theft, and/or the subsequent cover-up and attempts to hide millions in monies obtained from the theft, involved east bay attorneys, engineers in Pittsburg, PA, San Francisco, and Stojanovski, Miller, Lior, Garder, Ehrlich, Bender, and Levandowski's family members (Exhibit 10, 30, 39, 45) assisted with the lidar sales and new patents based on former contacts at Google and Bender's strong presence in Pittsburgh, P.A.  Levandowski worked with the names above to enter the microchip business in Israel (perhaps Mobileye) with Velodyne's former partners, Hall and Jellen.  Levandowski pays cash or assets to a "Pat Green" via Hazlett, Steve Levandowski, or Suzanna Musick at Tesla to keep current with Tesla Trucking, non-lidar technology and Nvidia microchips that compete with Mobileye microchips.

273.    Levandowski had ongoing  relationships with Hall, or used Robert Brown to enter the microchip business with Hall.  Based on what she heard in Levandowski's home, Hall, associates at Velodyne, Levandowski, and Stojanovski had a role in Qing Lue's departure

STERLING LAW FIRM
4750 Sunny Drive
Palo Alto, CA. 95628
TEL: 415-851-4386

(Velodyne) and created "JingChi Corporation" and similar lidar "start-ups" in Asia using stolen trade secrets and already existing patents (public or private).

274. Levandowski, Miller, Stojanovski, Bender, Rezneck, Ehrlich (his respective firm), Ramsey, Gardner and associates, were involved in a pre-calculated theft since 2014 or earlier based on materials found in Levandowski's home, blank NDA forms to recruit engineers in programming, robotics, and self-driving technology, and conversations heard including between Levandowski, Miller and Stojanovski.

275. Wong observed Levandowski for over six months, as a former executive at UBER, was primarily focused on liquidating assets since November 2016 to file bankruptcy as instructed by Ehrlich. Levandowski abused his status and title at UBER to recruit engineers for competing lidar "start-ups", and this escalated after his firing from UBER in May 2017. The lidar start-ups compete against UBER, Waymo, and Tesla. Wong heard Levandowski recruiting engineers with Miller, Stojanovski mentioning former DARPA associates, professors in Robotics, without the consent of Kalanick or UBER executives. Levandowski outsourced points of contact (resident addresses in the East Bay, San Francisco, state of Washington, Pittsburgh/PA, and Texas) using Gabby Levandowski, Adriana Levandowski, Maxime Levandowski, Mike Levandowski, Ehrlich, and Fleishhauser as points of contacts and transfers for documents and packages. Maureen Bender Levandowski moved from Washington to Napa within the past year to aid in receiving packages while Musick and Stephen Levandowski traveled to liquidate assets October 2016 to present. The online profiles (linkedin, facebook, etc) of Adriana Levandowski, Maxime Levandowski, Levandowski family members, Fleischhauser (perhaps her family members), and other engineers, were changed since June 2017 when Wong started her investigative journalist blog delving into these matters on "The Medium."

276. Gardner was using the salary information from Google to pay off "Richard Waters" from "Google" to promote business with Forrest Gardner (Exhibit 39) in Pittsburg, PA (Exhibit 30, 39).

277. Levandowski used his family members/middleman to pay off information about virtual reality, gaming information to Joe Traverso (Exhibit 30) and Belle Walker (Exhibit 30) for Boyd's (Exhibit 39) and Miller's monetary benefit. (Exhibit 30, 41, 39)

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL: 555-852-4368

278.    Based on what Wong heard in conversations between Mike Levandowski, Musick, Stephen Levandowski, and Anthony Levandowski; Adriana Levandowski, Mike Levandowski, Gabby  Levandowski, Maxime Levandowski, Ron , Miller, Stojanovski and (later) Fleishhauser had at one point a "copy" of the discs to transfer to different engineers in various states and countries after January 2016.  Based on Levandowski's phone conversations, the trade secrets variables including (lidar technology, microchips, software, hardware, circuit boards) were in consideration for potential sales or already sold to the Israeli, French, and Dutch armed forces. Since January 2016, Levandowski plotted with Ehrlich and Gardner, on how to benefit from the massive Google trade secret thefts and salary information using their own family members, Levandowski's, Gardner, Ehrlich.

279.    Wong alleges, UBER executives, UBER lawyers, and Kalanick were genuine in hiring Levandowski as ATG Lead.   Kalanick, UBER executives, and UBER lawyers were deceived in how (via former contacts at Google without the consent of UBER as a corporation) Levandowski would reach the "Milestones" promised by Levandowski.

The Fallout

280.    June 2017.  On or about June 18, 2017, Wong left again another legal notepad with legal notes for Levandowski asking him to amend the NDA. She also left a worker's compensation book from the Stanford Law School Library for Anthony, she highlighted in a bold red sharpie the sentence "The Genie is Out of the Bottle".  She texted Levandowski that evening, " I left you some items  in the back of your truck, let's meet Monday or Tuesday in a public place. I really need an hour uninterrupted. IP lawyers teach at Stanford, the firm that sued Donald trump, sent you arbitration papers last year, you failed to tell me that U got served and I'm in an awkward place. The nda has some serious issues too. Just call me next week." (Exhibit 63)

281.    After this event, Wong faced further retaliatory behavior from Levandowski. He called Wong's statements "inaccurate". "It is not true that I keep you standing in the kitchen for hours." He repeatedly denied the raise that was promised to Wong. Levandowski continually made false statements about Wong's character despite that fact that Wong had done her own legal research, used her own financial resources and sought out her own attorney because Levandowski was a criminal.

STERLING LAW FIRM
4750 Sherry Drive
Palo Alto, CA, 95628
TEL: 555-853-4388

282.     On June 20, 2017 Wong received an email from John Gardner, Levandowski's real estate attorney. "We are in receipt of your correspondence, which has been forwarded to us as personal counsel to Anthony Levandowski." (Exhibit 42)

283.     On June 20, 2017 Wong received an email from Levandowski's real estate attorney, John Gardner (Exhibit 44).

284.     Gardner called Wong's attorney making a promise to mediate quickly.

285.     On June 22, 2017, Wong called Levandowski in the evening (Exhibit 22).  She said, "I heard what you said to Randy, Ognen, Miles, and John in your home. You put me in an awkward situation. I am mad at you!"

286.     Levandowski texted Wong at 6:47 p.m. (Exhibit 27) "Let's get all the legal questions out of the way so things can be smooth moving forward."

287.     Levandowski responds, "Let me check my availability tomorrow after 2pm".

288.     On June 23, 2017 Levandowski texted Wong, "I can meet at my house at 4p.m. today. Can we do that?"  Wong responded "Yes".  At 3:41 p.m. Levandowski states "I am home".

289.     Wong and Levandowski met for under an hour.  The conversation was recorded. The meeting did not go well, Levandowski has a big history of flouting requirements of law and continued to flout requirements of law.

290.     During the one-hour conversation, Levandowski recorded the forty-five minute to one hour conversation.

291.     Levandowski asked her several questions. In fear of further verbal retaliation and based on what she heard about "Eric", she replied, "no" to Levandowski's questions. During this recorded conversation "Micheal" was referred to as Micheal Jellen.

292.     Levandowski asked Wong several times, "Did you see any photos?"

293.     "Do your law professors at school know that you work for me?" "Again, did you see any photos?" "Did you see any photos?"

294.     "Did you hear what I said when you walked into my bedroom the other day?" "Do you remember any of the guests that came over?"

295.     Wong replied, "I remember Ognen, Randy, and this other guy."

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL. 415-851-4386

296. Levandowski responded, "That was Micheal (Jellen)". "Did you hear my conversations between me and Micheal (Jellen)? "Do you remember what we said" (Michael Jellen)?

297. Wong, replied, "Well, I knew who they were, I read the newspaper. I knew who they were when they entered the house." Levandowski said, "Really?" Wong said, "Yes, I read the newspaper at home and school."

298. Levandowski asked, "What do you remember about Randy and Ognen?"

299. Well, I remember seeing the paper on the window, with the letter "N" you wrote on the brown paper. There was an arrow underneath the "n". I had my earphones on" (Exhibit 47, 27)

300. Wong discussed her education from her seminars at school, she showed him the lectures on self-driving vehicles. Levandowski appeared "shocked."

301. Wong asked Levandowski for the raise that was promised. Levandowski, said "No. Maria makes half as much as you do." Anthony calculated Wong's work hours on his iphone. Wong was shocked. Levandowski had been paying Wong for months on "salary" not hourly. Wong was surprised by Levandowski's mathematical inaccuracies. Wong rolled her eyes at Levandowski.

302. Wong responded, well, by the California Labor laws if we have similar job duties, then Maria has to get paid as much as I do."

303. Levandowski was "shocked." He said to Wong, your work is "contract work". Wong responded, "No it is not, being a nanny is not contract work, it's a grey area for a lot of employers but I researched this topic along with my attorney. Many times I left notepads for you with legal consequences of your claim, at your house, did you not read them? Maria saw the notes and she has to get paid as much as I do (Exhibit 27). It looks as if you are evading taxes under the wrong job misclassification."

304. Wong showed Levandowski a positive letter of recommendation from a worker's compensation law firm where she previously interned at years earlier.  (Exhibit 61)

305. He read it and said, "Oh, I didn't know." Levandowski's response was disappointment. He said, "I didn't know you were so knowledgeable."

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA. 95628
TEL. 555-852-4388

306.    Levandowski ended the conversation, stopped the recording. Levandowski walked Wong to the door, he asked Wong again, "Are you sure you didn't hear the conversations between me and Micheel Jellen? How about my brother Mike?" Wong rolled her eyes. Wong's response was, "Do you mind paying me, you are late again." Levandowski attempted a Wells Fargo surepay attempt on his iphone, he showed his iphone to Wong and the $750 transfer was denied. Levandowski said to Wong, "Sorry, I maxed out on m $2,500 today and I can't pay you."

307.    On June 24, 2017 at 10:38 a.m. Levandowski texted Wong, "Money sent.  I'll work on the contract based on the changes you requested. (Exhibit 27)

308.    On June 24, 2017 at 10:38 am Levandowski texted "No need for attorney intro" (Exhibit 27)

309.    On June 27, 2017 Wong sent Levandowski a text message, "You are welcome to send me the revised DNA (sic) before Thursday. I hope you have the appropriate counsel for this. The NDA should be separate from a work agreement. Thanks. Wong later texted, "FYI, Maria knows I get paid more, you left the notepads out when I asked you to put it away.  Her feelings might be hurt case she was there first and longer."

310.    On Wednesday June 28, 2017, Wong texted Levandowski, "Hi, Do you have the boys tomorrow? If you don't know yet, I'll check in with you tomorrow afternoon.  Levandowski texted, "I think I won't have the kids tomorrow.  Still working on the revised NDA to address the tax issues.  I'll send the money tomorrow anyway" (Exhibit 27).

311.    At 2:32 p.m. Levandowski texted Wong "I think so, let's plan on meeting next week Thursday."

312.    On June 28, 2017 Levandowski had yet again failed to revise the NDA. (Exhibit 27)

313.    On June 28, 2017 Wong texted Levandowski to say she would be calling Ehrlich's office for a mediation meeting. (Exhibit 27)

314.    On June 29, 2017 Wong again requested the revised NDA from Levandowski. He wanted to meet in person again with Wong.  Levandowski wanted to prevent her from speaking to Ehrlich.  (Exhibit 27)

STERLING LAW FIRM
4750 Sierra Drive
Palo Alto, CA  95628
TEL. 415-851-4368

315.     On June 30, 2017 Wong sent Levandowski an email requesting that he take care of the wage issue and misclassification for Maria.

316.     On Friday June 29, 2017 Wong texted Levandowski, "That NDA is not valid until I sign a new one that your attorney properly addresses wages, labor classifications, and confidentiality and privacy which are separate entities.  I'll say what I want, I've, my attorneys have waited months for the NDA.  Call me if you need to wed July 5th.  No more texting, please.  Thanks." (Exhibit 27)

317.     Levandowski responded, "The NDA is valid even if there is a new one under negotiation and or a part of the existing one is not valid.  Not sure why you are being so aggressive towards me."

318.     Wong responded, "No it is not. I've talked to several lawyers about it. I've paid for legal fees in the thousands and that's not fair to me. You don't let me explain so just have Miles Ehrlich call me wed June 7. I am not aggressive. Let's just mediate at your lawyers office. I'll bring a pound of paperwork with me, I am mad at you because you didn't tell me or maria (sic), Hi, I am a criminal!!!! Please don't text me I am upset, have your lawyer write me after June 7."

319.     Levandowski texted Wong, "Are you able to meet tomorrow?"

320.     Wong responded, "No, It's a holiday weekend and I want to enjoy it since my semester ended. Please don't call me I'll just talk to idiot Ehrlich myself (sic) the office." (Exhibit 27)

321.     Levandowski stated, "OK we can meet Wednesday but might not be with Mile Ehrlich." (Exhibit 27)

322.     At 4:55 p.m. Levandowski texted Wong, "June 7th passed, did you mean July 5th?"

323.     Wong responded back, "I'm busy and mad now. I'll say what I want to your idiot lawyers. The date is wrong on it, it can go to a declaratory filing because it was not signed on jan 1. How could that be, my lawyers didn't see t(sic) or approve it. Yes I want a break from this insanity."

324.     After being deceived for over eleven months and finding out that most all aspects of Levandowski's history (professionally and personally) were fabrications and that Levandowski had flouted labor laws and had engaged in undisclosed felonious activities and the very negative

STERLING LAW FIRM
4750 Street Drive
Park Suite, CA, 95628
FAX: 916-852-4388
TEL: 916-852-4388

impacts that it would have on her professional career to be associated with such a criminal, the work relationship between Wong and Levandowski became badly soured in late June of 2017.

325.   <u>July 2017</u>. Gardner emailed back Wong's attorney on July 1, 2017. "I will be in Montana" over the weekend.

326.   Wong's attorney asked Levandowski to pay for the mediation, Wong's travel expenses, late wages, and health stipend.

327.   Levandowski suggested meeting on July 5, 2017, via text message. Wong never actually heard back from Levandowski regarding a mediation meeting by July 5, 2017. (Exhibit 27)

328.   On July 5, 2017 Wong called Ehrlich's office and left a voicemail message to have Ehrlich mediate immediately.

329.   On July 5, 2017, Gardner responded back, "We are in receipt of your correspondence, and will discuss this matter with our client." (Exhibit 42)

330.   Wong's attorney requested Levandowski pay for Wong's legal mediation fees and travel stipend.

331.   On July 6, 2017 Gardner wrote to Wong "asking Levandowski to cut a check of $2,500 in advance is a stretch. Please free to call if you'd like to discuss. Your proposal to meet July 7, 2017 is acceptable. Please advise us regarding who will represent you." (Exhibit 42)

332.   On July 7, 2017 Levandowski and Gardner failed to pay $2,500 for mediating employment issues between Wong and Levandowski.

333.   On July 7, 2017 Gardner wrote to Wong's attorney, Sterling, "Nate, Let me work on this (no promises)-are you requesting a day's legal fees for attending a mediation, payable at this time? (Exhibit 42)

334.   Sterling responded, "Yes."

335.   On July 11, 2017 Gardner wrote to Sterling. "We continue to be open to mediating and resolving any open disputes between the parties. More substantively, it remains unclear to us how Ms. Wong can assert that she is an employee where she operated a babysitting business, held herself out as an independent contractor, and entered into an agreement with our client on that basis…

STERLING LAW FIRM
4750 Steen Drive
Palo Alto, CA 95628
TEL: 415-851-4366

336. These matters should be capable of resolution, and we would be willing to meet later this week to address any disputes between the parties. Please advise regarding your availability to set a convenient date and time for such a meeting. Best Regards, John" (Exhibit 42).

337. On July 13, 2017 Gardner wrote to Sterling. "Hi Nate, yes next Wednesday will work for a mediation. Anthony can't attend but I have full settlement authority. I will look into the funds transfer and believe I can get it coordinate for you today. Thanks, John" (Exhibit 43).

338. On or about July 14, 2017, Wong sent Levandowski a reply at 9:58 p.m. Wong texted Levandowski a screen shot of the text message sent to him on April 8th, 2017. She wrote "Ericas dominatrix (girls) boots found on this day. (Exhibit 46) Preparing exhibits and a legal complaint is not fun. You can file for unemployment if 2500 is a stretch. Shocking and appalling? How dare you! Your son M.O.L. almost choked on bdsm gear. Dates specific on complaint." (Exhibit 27)

339. On July 19, 2017, Sterling drove to Oakland to meet with Gardner attempting to resolve and/or narrow the issues in dispute. Underlying issues did not resolve but an agreement was reached to attend formal mediation with a retired judge.

340. On July 19, 2017, Gardner wrote to Sterling, "Nate, Thank you for a productive mediation session today. As you requested, we would be amendable to a formal mediation before a retired Federal Judge to narrow the issues between our clients and move towards a mediated settlement. Please advise us to next steps in the process. Best regards, John" (Exhibit 42).

341. On July 27, 2017 Gardner wrote to Sterling. "Hi Nate, Thanks for reaching out about this. I've been out of pocket today but wanted to get back to you. I think the weekly went through. I'm only in a few hours tomorrow, then out to Northern California over the weekend. Can we catch up first thing next week? John (via wireless)".

342. <u>August 2017</u>. Wong sent repeated requests to Levandowski for unpaid/late wages and a health stipend. Wong was repeatedly ignored and requests refused by Levandowski and/or his attorneys. (Exhibit 14)

343. On August 7, 2017 Gardner wrote to Sterling. "Hi Nate, Let me get back to you tomorrow. I know I can't make the 8/22 date, but might be able to move things around for the 8/29 or 8/30. Also, who is the other judge in Los Angeles? Thanks, John" (Exhibit 42).

STERLING LAW FIRM
4750 Sierra Drive
Palm Desert, CA. 92628
TEL. 213-863-4380

344.        On August 9, 2017 Gardner wrote to Sterling, "Nate, I was able to rearrange my calendar, please advise if we are confirmed for August 29 or August 30 for mediation before Judge Westerfield. Thanks, John" (Exhibit 42).

345.        On August 9, 2017 JAMs confirmed an engagement agreement showing that the employer will pay 100% of mediation fees.  (Exhibit 42)

346.        A day or two before the scheduled mediation, Gardner abruptly cancelled the mediation without explanation.

347.        Sterling received an email from Gardner on August 31, 2017. "I will be on vacation and without access to email through Sept 5, 2017. (Exhibit 42)

348.        September 2017. On September 11, 2017 Wong sent via messenger a verification form and a USB drive of Levandowski's accomplices (rough drafts), video reel and family map to Judge Corley and Judge Alsup. (Exhibit 24, 30)

349.        On or about September 21, 2017 Wong sent via certified mail to Ehrlich's office overdraft fees for Levandowski's checking account at Wells Fargo. She sent form DLSE-281, an application for Levandowski "permission to employ minors in the entertainment industry" (Exhibit 16, 35).

350.        On September 25, 2017 Wong sent via fax to Gardner's office Form W-4 (Exhibit 34).

351.        Wong later sent Ehrlich several emails and packages to Levandowski's criminal attorney. The packages included overdraft fees/receipts for Levandowski's checking account under Wong's name. (Exhibit 14)

352.        Wong also sent an application, DLSE-281 form (permission to employ minors in the entertainment industry) for Levandowski.

353.        During the month of September 2017 Gardner sent Sterling a request for Form W-4 and I-9.

354.        Wong faxed the W-4 and I-9 to Gardner's office on September 15, 2017 from Los Angeles in the afternoon. (Exhibit 34)

355.        On September 20, 2017 Gardner sent Sterling an email. "Nate, We are confirming receipt of Ms. Wong's completed W-4 and I-9 forms. Ms. Wong's terms of

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL: 415-851-4388

employment include payment at a rate of $45 per hour… Please provide Ms. Wong's hours worked since March 7, 2017... We are also inquiring as to a rescheduled mediation in this matter. Please advise regarding available dates. We look forward to hearing from you. Best regards, John" (Exhibit 42).

356.     Sterling responded, "Wong is on salary, she has been employed since December 2016. Levandowski wrote Wong checks in January 2017."

357.     On September 22, 2017, Gardner wrote to Sterling. "Nate, Thanks for the response. I just reviewed the contract in our files, dated January 1, 2107(sic), and it does appear to state a rate of $45 per hour. Ms. Wong may have another agreement we have not seen, in which case we would appreciate your forwarding it to us for review. Although we continue to have differences of opinion regarding Ms. Wong's employment status and without waiving those issues, as a matter of good faith we have arranged and paid for all payroll withholding taxes against Ms. Wong's wages from the inception of her employment, based on the contract dated January 1, 2017. In response to your prior message we are again requesting proposed mediation dates so that the parties can discuss and resolve any remaining issues. Please advise. Best regards, John" (Exhibit 42).

358.     <u>October 2017</u>. On October 2, 2017 Gardner sent Sterling an email. "Nate, We have reviewed calendars, and would be available for mediation before Judge Westerfield on November 8-9, or the week of November 13, 2017. Please advise if these dates are acceptable, or we can discuss other open dates. Best regards, John" (Exhibit 42).

359.     Sterling responded that Wong is checking on the dates and Wong is owed overdue 5 weeks of $750 minimum per week as per employment agreement and is ill and needs a health stipend.

360.     On October 23, 2017 Sterling stated the mediation dates of November 8-9 or the week of November 13 are okay with us for mediation with Judge Westerfield.

361.     On October 24, 2017 Gardner sent Sterling an email, "Hi Nate, Let me check availability and get back to you. Thanks, John".

362.     In late October 2017 Wong and her attorney received a copy of the NDA via email from Gardner. The document was forged by Levandowski (Exhibit 17). Wong recalled the

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL: 415-851-4368

hourly wage agreement no longer existed, Wong had been on salary since February 2017. Levandowski repeatedly failed to provide a copy of the purported NDA (Exhibit 27) and later Levandowski presented Wong and her attorney a forged document. (Exhibit 17)

363.     Wong filed an initial complaint, retaliation form, DLSE Form 55 with the Labor Commissioner in Oakland against Levandowski on Friday, October 28, 2017. (Exhibit 23)

364.     After months of intentional fraud and deceit and a generalized scofflaw attitude by Levandowski, and numerous repeated state and federal labor law violations, and a retaliatory and hostile work environment as outlined herein, and repeated delays and failure to mediate as agreed, Wong was forced to file a complaint with the DLSE labor board commissioner on October 28, 2017.

365.     Over the last six months, Levandowski and/or his attorney made false promises of settlement and mediation inducing further damages and substantial attorney fees to Wong (Exhibit 44).

366.     Promises were made to mediate with goal of settling expeditiously, but according to Wong, the intent was to string along Wong and for needlessly increasing her attorney fees. Levandowski and his attorney Gardner failed to attend mediation with Judge Westerfield that was scheduled and paid for in advance, further needlessly increasing Wong's attorney fees and inducing more harmful and costly delays and back and forth (Exhibit 44). Email responses were delayed from Gardner up to one month. False dates of hire were reported by Levandowski. Levandowski and/or by and through his attorney falsely induced Wong to provide a W-4 and I-9 under promise of continuing to pay the $750 minimum per week, but then once Wong provided the W-4 and I-9 Levandowski and/or by and through his attorney willfully and maliciously refused to pay the $750 minimum per week in retaliation and breach of state and federal labor laws and prior employment agreement. Deceitful tactics were used to callously and maliciously delay and not pay work wages for Wong on a weekly basis by Gardner and Levandowski over a six-month period. Wong alleges Levandowski collaborated with his lawyers to callously and intentionally drain her resources and needlessly drive up her attorney fees, knowing she was indigent and had serious health problems, to place her in a desperate position where she would be unable to file a complaint with the labor board commissioner and unable to file an actual lawsuit in federal court.

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL: 555-851-4388

367.     November 2017.  On November 3, 2017 Wong posted an instagram of a video of the initial complaint to the Labor Board Commissioner.

368.     On November 3, 2017 Gardner wrote to Sterling: "November is unfortunately not going to work at this point. Could you please suggest some dates in December when you would be available?"

369.     Gardner wrote an email to Sterling, the next day. "When can we schedule a mediation?" We also would appreciate confirmation per our request below.  Thanks John" (Exhibit 42).

370.     Sterling responded on November 3, 2017 "We will make ourselves available to try and achieve a mediated resolution pretty much whenever in December…please go ahead and book the mediation with Judge Westerfield…let us know…thanks."

371.     Wong then posted on her blog "Who is Andrew Gardner, did he write software for Google? Is this the same person as Andrew Hunt? Did John Gardner change his name? (Exhibit 42)

372.     Wong's attorney got a response automatic reply an hour later. "Thanks for your message. I will be in Alberta through Wednesday morning with limited access to email. John" (Exhibit 42)

373.     On November 6, 2017 Wong received an email.  The email was from Shelly Fleishhauer. (shellyyk1977@yahoo.com) The email read "I am looking for Erika Styles. Do you know her? My sister is dating Anthony Levandowski. He told me something very disturbing. My sis has had many bruises and I watch Erika Styles you tube clip about someone getting rape. (sic) Sis notice items in video. (Exhibit 32)

374.     On or about November 7, 2017 Wong emailed Miles Ehrich and John Gardner to stop sending "fake emails" to Wong.

375.     On November 13, 2017 Gardner wrote "Nate, we are circling back with you regarding a mediation of any remaining disputes between our clients. December is fairly impacted, but please advise as to dates in December and January for that purpose."

376.     On November 14, 2017 Wong's attorney responded to Gardner. (According to JAMS ADR, there was no record of Gardner contacting JAMS nor attempting to reschedule

STERLING LAW FIRM
4790 Irvine Drive
Palo Alto, CA, 93628
TEL: 954-804-4388

mediation since August 2017.) Sterling, Wong's attorney wrote to Gardner, "We contacted JAMS and found out that Judge Westerfield is available December 18, 19, 20, 21 as well as January 8,9,10,11,12. Any of those dates work for us. You can go ahead and book it. Best, Nate Sterling."

377. No response was received back from Gardner through at least December 1, 2017.

378. Over the past more than six months, employer Levandowski and/or by and through his attorney(s) made false claims regarding Wong's work status, failed to pay Wong's wages, paid Wong late, stated two false hiring dates, made legal threats of violating an unlawful "NDA", repeatedly retaliated against Wong for her protected activity, breached the implied covenant of good faith in fair dealing repeatedly, etc., as set forth more fully in this Complaint. Levandowski and/or by and through his attorney(s) breached written, oral and implied contracts to mediate and settle quickly and in good faith the multiple state and federal labor law violations. Levandowski and/or by and through his attorney failed to cooperate as to reschedule a mediation since August 2017. Levandowski and/or by and through his attorney repeatedly asked for "open dates", yet when Wong's attorney responded to please get it booked and we will make ourselves available, the responses were repeatedly "I am out of town, "those dates won't work", "what other dates?" "Any thoughts?", "Please provide forms", "How do you advise?" etc etc etc. Wong alleges Levandowski intentionally planned with his attorney(s) to needlessly delay and string this along and drive up Wong's attorney fees and cause Wong severe emotional and mental distress and anguish, and also cause Wong's inability to proceed forward with her career due to being held in limbo until this matter resolves as Wong is still employed with Levandowski, as Wong has not quit nor has her employment been terminated. This retaliatory and vexatious course of conduct by Levandowski and/or by and through his attorney(s) in violation of numerous federal and state laws has caused Wong substantial money damages, mental and emotional distress, pain and suffering, lost wages, and attorney fees, all of which damages are ongoing and accruing daily.

379. On November 14, 2017, Wong sent a cease and desist request to Gardner. Wong filed an initial complaint, retaliation complaint, DLSE form with the Labor Board Commissioner.

STERLING LAW FIRM
6700 Sterry Drive
Fair Oaks, CA 95628
TEL: 916-801-4386

380.    Plaintiff therefore sues to recover compensatory and expectation damages incurred due to Levandowski's breaches of contract, misrepresentations, recover lost and unpaid wages and benefits, past present and future, a punitive and exemplary award sufficient to deter Defendant from causing similar damage to others in the future, all attorney fees and costs, all civil penalties, etc., as more fully set forth herein.

### FIRST CAUSE OF ACTION

MISCLASSIFICATION OF EMPLOYEE AS INDEPENDENT CONTRACTOR

(Against all Defendants)

381.    As a first, separate and distinct cause of action, plaintiff complains against defendants Anthony Levandowski, and DOES 1 through 10, and each of them, and for a cause of action alleges:

382.    Plaintiff hereby incorporates by reference all above paragraphs, as though set forth here in full.

383.    During the period when Plaintiff worked for Defendants, Plaintiff was an employee, as defined by Labor Code §§218 and 2750, as well as other California statutes and California common law.

384.    The Defendants misclassified Plaintiff as a purported "independent contractor" throughout Plaintiff's employment.

385.    As a result of misclassifying Plaintiff as a purported "independent contractor," the Defendants lowered their cost of doing business by not paying the employer's share of government-mandated payroll taxes and insurance contributions with respect to any of the funds paid to Plaintiff.

386.    As a legal result of the Defendants' misclassification of Plaintiff as an independent contractor in violation of California law, Plaintiff has suffered, and continues to suffer, substantial losses related to the loss of the employer's share of government-mandated payroll taxes and insurance contributions and the use and enjoyment of such employee benefits.

387.    As a legal result of the Defendants' misclassification of Plaintiff as an independent contractor in violation of California law, the Defendants have been unjustly enriched by their

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 93628
TEL. 555-951-4368

failure to pay the employer's share of government-mandated payroll taxes and insurance contributions. Plaintiff may seek leave to amend this Complaint to state the precise amount or will proceed according to proof at trial.

388.     The Defendants failed to classify Plaintiff as an employee, in violation of California law, and this failure was knowing and intentional. The Defendants failed to classify Plaintiff as an employee for false and fraudulent reasons. The decision to misclassify Plaintiff as an "independent contractor" was made, maintained, and enforced by the Defendants, and was done willfully, maliciously, oppressively, and fraudulently, with the wrongful and deliberate intention of injuring Plaintiff. The Defendants willfully failed to pay applicable government-mandated payroll taxes and workers compensation and other insurance contributions and did so with a conscious disregard for the rights of Plaintiff and the taxpayers at large, all of which has deprived Plaintiff of her property and legal rights. Therefore, in addition to all other types of relief requested herein, Plaintiff is entitled to recover punitive and exemplary damages in amounts according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

<u>SECOND CAUSE OF ACTION</u>

VIOLATION OF BUSINESS & PROFESSIONS CODE §17200 & 17500

(Against all Defendants)

389.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

390.     At all times herein, Defendants, and each of them, engaged in a pattern and practice of unlawful, unfair and/or fraudulent business practices and advertising and marketing for nanny services even though Defendants, and each of them, knew or should have known that the advertising and marketing for nanny services was unfair, false, deceptive and misleading without disclosing legally required information including that Defendants sought to unlawfully misclassify nanny as independent contractor to evade taxes and payment of other benefits instead of as lawful employee.  These practices constitute unlawful, unfair and/or fraudulent business acts or practice

STERLING LAW FIRM
4750 Street Drive
Park Suite, CA, 93628
TEL: 353-853-4384

and/or unfair, deceptive, untrue or misleading advertising within the meaning of California Business & Professions Code § 17200 and 17500.

391.    Plaintiff seeks the imposition of a constructive trust over, and restitution and disgorgement of, the monies collected and/or profits realized by Defendants, and each of them, as a result of their unfair business practices, and injunctive relief calling for Defendants to cease such unfair business practices in the future.

392.    The violations of the Labor Code and the Wage Order by the Defendants, and all the statutory violations constituting negligence per se as set forth below, including the Defendants' failure to pay Plaintiff earned wages, rest and meal periods, and overtime wages, constitute unfair business practices in violation of Business and Professions Code §17200, et seq. ("Unfair Competition Law" or "UCL"), and under the UCL provisions all civil penalties otherwise claimed by government are claimed herein as private attorney general as authorized under 17200 et seq.

393.    The Unfair Competition Law prohibits any practices forbidden by law, be they civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. South Bay Chevrolet v. General Motors Acceptance Corp. (1999) 72 Cal.App.4th 861, 880; see also Harris v. Investors Bus. Daily, Inc. (2006) 138 Cal.App.4th 28.

394.    Plaintiff has suffered injury in fact and has lost money or property as a result of the unfair business practices of the Defendants, who have reaped unfair benefits and unlawful profits at Plaintiff's expense.

395.    Plaintiff is entitled to immediate possession of all amounts owed to her by the Defendants, with interest.

396.    The unfair business practices of the Defendants entitle Plaintiff to seek relief, including but not limited to orders that the Defendants account for, disgorge, and restore to Plaintiff the compensation unlawfully withheld from her.  Plaintiff may seek leave to amend this Complaint to state the exact amount, or will proceed according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## THIRD CAUSE OF ACTION

(By Plaintiff for Fraud and Deceit (Civil Code 1709-1710; 1534) against all Defendants)

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL. 916-851-4368

397.   Plaintiff incorporates herein by this reference all paragraphs above as if fully set forth at this point.

398.   Defendants engaged in fraud and deceit towards Plaintiff as set forth more fully hereinabove.

399.   As a direct and proximate result, Plaintiff has suffered emotional distress and economic damages, and Plaintiff suffered losses of income all such damage according to proof at trial.

400.   Defendants violated numerous provisions of California and Federal Law set forth in this Complaint and these violations were knowing and intentional. The Defendants failed to classify Plaintiff as an employee for false and fraudulent reasons, including tax fraud. The decision to misclassify Plaintiff as an "independent contractor", and numerous other law violations, were made, maintained, and enforced by the Defendants, and were done willfully, maliciously, oppressively, and fraudulently, with the wrongful and deliberate intention of injuring Plaintiff, taxpayers, and the governments of California and the USA. The Defendants willfully failed to pay applicable government-mandated payroll taxes and workers compensation and other insurance contributions, as mandated by the IRS and California's FTB, and did so with a conscious disregard for the rights of Plaintiff and the taxpayers at large, all of which has deprived Plaintiff of her property and legal rights. Therefore, in addition to all other types of relief requested herein, Plaintiff is entitled to recover punitive and exemplary damages in amounts according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

<u>FOURTH CAUSE OF ACTION</u>

(By Plaintiff for Failure to Pay Wages, breaching written, oral and/or implied contract, against all Defendants)

401.   Plaintiff incorporates herein by reference all paragraphs above as if fully set forth herein.

402.   Defendants failed to pay Plaintiff all wages due when due in breach of written, oral and/or implied contract(s).

STERLING LAW FIRM
4750 Street Drive
Park State, CA 93628
TEL: 916-851-4386

403.    Among other breached agreements by Defendant, Plaintiff Wong was and is contractually owed $750 minimum per week but Defendant has not paid the $750 minimum since on or about the start of September 2017 in ongoing breach of their agreement.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

### FIFTH CAUSE OF ACTION

(By Plaintiff for Breach of Written and/or Oral and/or Implied Contract, against all Defendants)

404.    Plaintiff incorporates herein by reference all paragraphs above as if fully set forth herein.

405.    Defendants breached one or more written, oral and/or implied contracts or agreements with Plaintiff.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

### SIXTH CAUSE OF ACTION

(By Plaintiff for Negligence (common law and Cal. Civ. Code 1714) causing employment damages and mental and/or emotional distress, against all Defendants)

406.    Plaintiff hereby realleges and incorporates by this reference all preceding paragraphs of the Complaint, as if fully set forth herein.

407.    As set forth hereinabove, Defendants subjected Plaintiff to unlawful harassing, hostile, illegal, discriminatory and retaliatory treatment. Defendants had a duty to exercise reasonable care and prudence to provide a safe, healthful, non-hostile, non-harassing, lawful, non-illegal, non-retaliatory working environment, which duty they breached. Defendants also had a duty to exercise reasonable care and prudence to take all reasonable steps to prevent unlawful conduct from occurring, which duty they breached.

408.    Defendants' breach of duty was the actual and proximate cause of damages suffered by Plaintiff.

STERLING LAW FIRM
4750 Sierra Drive
Palm Desert, CA, 93628
TEL 555-951-4568

409.    Furthermore, the manner in which Defendants acted was negligent, and without due regard to Plaintiff's emotional and physical well-being, and was at least negligent in causing serious emotional distress.

410.    Furthermore, Defendants at least negligently failed and refused to take all reasonable steps necessary to prevent such unlawful conduct from occurring.

411.    As a direct, foreseeable, and legal result, Plaintiff were harmed, and continue to suffer harm, in an amount not yet fully ascertained and to be proved at trial.

412.    As a direct, foreseeable, and legal result of Defendants' at least negligent misconduct, Plaintiff suffered severe mental and emotional distress and anxiety the exact nature, extent, duration or permanence of which are not yet known to Plaintiff.  However, Plaintiff is informed and believe, and based thereon allege, that some of the injuries are reasonably certain to be permanent in character.

413.    As a further legal result of the acts and omissions of the Defendants and each of them, Plaintiff may be forced to incur substantial expense for medical and/or psychological care in an amount which is at present unknown.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

### SEVENTH CAUSE OF ACTION

### (By Plaintiff for IIED against all Defendants)

414.    Plaintiff hereby realleges and incorporates by this reference all preceding paragraphs of the Complaint, as if fully set forth herein.

415.    As set forth hereinabove, Defendants subjected Plaintiff to unlawful harassing, hostile, illegal, discriminatory and retaliatory treatment.

416.    Furthermore, the manner in which Defendants acted was callous, and without due regard to Plaintiff's emotional and physical well-being, and was done with the intention of causing, and did in fact cause, serious emotional distress in Plaintiff, or was at least negligent in causing serious emotional distress.

417.    Furthermore, Defendants knowingly and intentionally, or at least negligently failed and refused to take all reasonable steps necessary to prevent such unlawful conduct from occurring.

STERLING LAW FIRM
4750 Sinton Drive
Palo Alto, CA 93628
TEL: 415-851-4368

418.    Said conduct on the part of Defendants, and each of them, was extreme and outrageous.

419.    As a direct, foreseeable, and legal result, Plaintiff were harmed, and continue to suffer harm, in an amount not yet fully ascertained and to be proved at trial.

420.    As a direct, foreseeable, and legal result of Defendants' willful or at least negligent misconduct, Plaintiff suffered severe mental and emotional distress and anxiety the exact nature, extent, duration or permanence of which are not yet known to Plaintiff.  However, Plaintiff is informed and believe, and based thereon allege, that some of the injuries are reasonably certain to be permanent in character.

421.    As a further legal result of the acts and omissions of the Defendants and each of them, Plaintiff may be forced to incur substantial expense for medical and/or psychological care in an amount which is at present unknown but alleged to be in need of at least $1,000 per week in psychological care due to this whole hellish ordeal that Anthony Levandowski has put her through due to his habitual and sociopathic disregard of the law.  Anthony may claim he was not aware of the applicable laws he was violating, but ignorance of the law is no excuse. He is duty-bound as an employer to learn the applicable laws and abide by them.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

<u>EIGHTH CAUSE OF ACTION</u>

(By Plaintiff for Negligent and/or Intentional Interference with Prospective Economic Advantage/Relations, against all Defendants)

422.    Plaintiff hereby incorporates by reference all foregoing paragraphs of this Complaint as if fully set forth herein.

423.    At the time of Defendants' conduct and acts described herein Plaintiff enjoyed relationship(s) which held the probability of prospective economic advantage, and with her employer which relationship had economic benefit to Plaintiff.

424.    With knowledge of such relationship, Defendants, to the extent they acted intentionally, intentionally did such acts which disrupted such relationships; otherwise, Defendants negligently did such acts which disrupted such relationship.

STERLING LAW FIRM
4750 Steiner Drive
Palo Alto, CA, 93628
TEL: 415-851-4386

425.    As a direct and proximate result of such interferences, Plaintiff has suffered emotional distress, and Plaintiff suffered losses of income, all such damage according to proof at trial.

426.    To the extent Defendants acted intentionally in causing the said interferences, Defendants have acted willfully and with conscious disregard of Plaintiff's rights, and with intent to annoy, harass and injure Plaintiff such that Plaintiff is entitled to recover punitive and exemplary damages from Defendants in a sum according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

<u>NINTH CAUSE OF ACTION</u>

NEGLIGENCE PER SE FOR VIOLATING STATUTES

(By Plaintiff Against All Defendants)

427.    Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein.

428.    Defendants' negligence as stated above was negligence per se because in violation of numerous statutes designed to protect against the kind of harm which Plaintiff suffered, which statutes are set forth in this Complaint. By way of example only: Gov. Code section 12900 et seq. was legislated with the intent of preventing and protecting California's workers from retaliation.

429.    California Labor Code §§ 2802 and 3710.1, which allows the EDD to go back three years and seek reimbursement for unpaid payroll taxes, unemployment insurance, disability insurance, workers' compensation insurance.

430.    California Labor Code Sections 226.8 and 2753 authorize California's Labor and Workforce Development Agency to assess civil penalties of not less than $5,000 and not more than $15,000 for each violation in addition to those civil penalties already permitted by law. The civil penalties increase to $10,000 and $25,000 for each violation if the Agency determines that the employer has engaged in a pattern, or practice, of willful misclassification of its employees as independent contractors.

431.    The misclassified employee can seek up to three years worth of unpaid wages (including overtime and meal and rest break violations), unreimbursed businesses expenses, and

STERLING LAW FIRM
4750 Stoner Drive
Palo Alto, CA, 95628
TEL. 555-851-4388

penalties for violating various California Labor Code provisions. See, Labor Code §203, §210, §226.3, §2802 and §3710.1; and California Unemployment Insurance Code §§1112, 1113 2, and 2118). California business owners may also face exposure to tort liability for injuries suffered by employees when workers compensation insurance was not secured (Labor Code §3706), for unfair business practices (Business and Professions Code §17200), and potential criminal liability under Labor Code §3700.5.

432.    Pursuant to California Labor Code § 210, a misclassified worker may claim that the business failed to follow California's timing and recordkeeping requirements as set forth in the California Labor Code with attendant civil penalties which may be collected under the private attorney general provisions of 17200.

433.    Pursuant to California Labor Code § 226.3, a misclassified worker may claim that the business violated the statutory obligation to provide itemized wage statements each pay period. If the Court determines the worker was in fact an employee, the court may award additional civil penalties in the amount of $250 per employee for the first citation and $1,000 per employee for each subsequent citation. It should also be noted that under California Labor Code §226.6, a knowing and intentional violation of these requirements is a misdemeanor.

434.    Pursuant to California Labor Code § 203, the failure to pay a terminated employee all wages due and owing in a timely fashion can subject an employer to a penalty of up to 30 times the employee's daily wage without regard to the actual amounts of unpaid wages. Needless to say, when a worker is misclassified it is a given that the payroll taxes have not been paid and in turn that the misclassified worker was not therefore paid all wages due and owing at the time of termination.

435.    Pursuant to California Unemployment Insurance Code §§1112 and 1113.2, if a court determines that a worker was misclassified, the employer will be assessed amounts due for state income tax withholding, unemployment insurance contributions, and disability insurance contributions, unless the employer can show the income was reported and all taxes due were paid by the employee. Employers who fail to pay for unemployment insurance benefits and/or state disability insurance benefits are not only required to pay the unwithheld amounts, but may also be assessed a 10% penalty and interest on the unpaid contributions.

STERLING LAW FIRM
4730 Sunset Drive
Palm Springs, CA, 95628
TEL: 415-851-4368

436.   Failure to make appropriate withholdings for state income tax payments from employee paychecks is a misdemeanor and a California employer, if convicted, may be fined up to $1,000 and/or sentenced to serve up to one year in prison. (CA Unemployment Insurance Code § 2118).

437.   Employers who misclassify employees as independent contractors may be required by the IRS to pay all of the employee's unpaid FICA (Social Security), FUTA (Federal Unemployment), and income tax withholdings. See, Robert Patrick Day v. Commissioner, U.S. Tax Ct. (Dec. 13 2000) Memorandum Decision, Docket No. 7118-98. Employers may also be assessed a penalty of $5,000 per misclassified worker plus 1.5% of the employee's federal income tax liability plus 20% of the amount that should have been withheld for the employee's FICA taxes.

438.   Defendants' negligence was the proximate cause of harm suffered by Plaintiff.

439.   Plaintiff has suffered damages in an amount within the jurisdictional limits of this Court according to proof at trial.  All civil penalties set forth above are recoverable by Plaintiff under the private attorney general provisions of the UCL, B&P 17200 et seq.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth below.

## TENTH CAUSE OF ACTION

### (By Plaintiff for Wrongful Demotion against all Defendants)

440.   Plaintiff incorporates by reference all above paragraphs as if fully set forth herein.

441.   Plaintiff suffered wrongful demotion by Defendants and had her terms and conditions of employment altered in violation of numerous laws protecting employees from retaliation etc. including but not limited to FEHA 12940(h), FEHA 12960, B&P 17200, FEHA 12940(k), Cal Labor Code 98.6, Cal Labor Code 1102.5, Title VII, 42 USC Section 1981, etc.

442.   Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## ELEVENTH CAUSE OF ACTION

STERLING LAW FIRM
4750 Sierra Drive
Palo Alto, CA. 95628
TEL. 415-851-4388

(By Plaintiff for Breach of Implied Covenant of Good Faith

and Fair Dealing against all Defendants)

443. Plaintiff incorporates by reference all above paragraphs as if fully set forth herein.

444. Implied in every contract is a covenant that the parties will act with good faith and fair dealing in their relations with each other.

445. Defendants breach the implied covenant by failing to act with good faith and fair dealing towards Plaintiff on more than one occasion causing cognizable damages to Plaintiff.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

TWELFTH CAUSE OF ACTION

RETALIATION

(In Violation of Fair Employment and Housing Act, Cal. Gov. Code § 12900 *et seq.*)

(By Plaintiff Against All Defendants)

446. Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

447. Plaintiff is protected under the Fair Employment and Housing Act from retaliation based on protected personal status or characteristics such as age, religion, race etc., and also based on protected actions including her asserting her legal rights or filing complaints for employer's legal violations, filing a workers compensation or government agency claim, and any other legally protected actions.

448. Defendants unlawfully retaliated against Plaintiff due to Plaintiff's complaints about unlawful misclassification, and declining to sign unlawful documents, and based on her age, religious beliefs, and work-related severe emotional distress.

449. Defendants' conduct as alleged in this complaint constitutes an unlawful employment practice in violation of Cal. Gov. Code §12900 *et seq.*, and as interpreted by *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028. Defendants unlawfully retaliated against Plaintiff due to Plaintiff's complaints about unlawful misclassification, and declining to sign unlawful documents, and based on her age, religious beliefs, and work-related severe emotional distress.

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA. 95628
TEL. 415-851-4368

450.    As a direct, foreseeable, and proximate result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer substantial losses in earnings and job benefits, and has suffered and continues to suffer depression, anxiety, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount within the jurisdictional limits of this Court, to be established according to proof at trial.

451.    Defendants committed the acts described in this complaint oppressively, and maliciously, entitling Plaintiff to an award of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## THIRTEENTH CAUSE OF ACTION

### DISCRIMINATION AND HARASSMENT

(In Violation of Fair Employment and Housing Act, Cal. Gov. Code § 12960 *et seq.*)

(By Plaintiff Against All Defendants)

452.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

453.    Defendants violated FEHA by discrimination and harassment against Plaintiff in violation of Plaintiff's legal rights as set forth herein.

454.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## FOURTEENTH CAUSE OF ACTION

### NEGLIGENT AND/OR INTENTIONAL INTERFERENCE WITH CONTRACT

(By Plaintiff Against All Defendants)

455.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 93628
TEL: 555-851-4368

456.    Defendants negligently or intentionally interfered with Plaintiff's contractual advantage(s), and/or contractual relationship(s), in violation of Plaintiff's legal rights as set forth herein.

457.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## FIFTEENTH CAUSE OF ACTION

### CONVERSION OF WAGES AND PERSONAL PROPERTY

#### (By Plaintiff Against All Defendants)

458.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

459.    Defendants converted Plaintiff's wages and personal property in violation of Plaintiff's legal rights as set forth herein.

460.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, mental distress etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## SIXTEENTH CAUSE OF ACTION

### NEGLIGENT HIRING, TRAINING, SUPERVISION and/or RETENTION

#### (By Plaintiff Against All Defendants)

461.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

462.    Defendants were negligent in their hiring, training, supervision and/or retention in violation of Plaintiff's legal rights as set forth herein.

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL. 916-801-4384

463.     Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, distress, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## SEVENTEENTH CAUSE OF ACTION

### FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND/OR RETALIATION

(In Violation of Fair Employment and Housing Act, Cal. Gov. Code § 12940k)

(By Plaintiff Against All Defendants)

464.     Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

465.     Defendants violated FEHA by failing to prevent discrimination and/or harassment and/or retaliation against Plaintiff in violation of Plaintiff's legal rights as set forth herein.

466.     Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, emotional distress, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## EIGHTEENTH CAUSE OF ACTION

### FAILURE TO ENGAGE IN INTERACTIVE PROCESS

(In Violation of Fair Employment and Housing Act, Cal. Gov. Code § 12940n *et seq.*)

(By Plaintiff Against All Defendants)

467.     Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

468.     Defendants violated FEHA by failing to engage in a good faith interactive process with Plaintiff in violation of Plaintiff's legal rights as set forth herein.

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL: 415-851-4384

469.   Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, distress, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## NINETEENTH CAUSE OF ACTION

### UNRUH CIVIL RIGHTS ACT

### (By Plaintiff Against All Defendants)

470.   Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

471.   Defendants violated the Unruh Civil Rights Act by discrimination and/or harassment and/or retaliation against Plaintiff in violation of Plaintiff's legal rights as set forth herein.

472.   Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## TWENTIETH CAUSE OF ACTION

### VIOLATION OF ADEA

### (By Plaintiff Against All Defendants)

473.   Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

474.   Defendants violated ADEA in violation of Plaintiff's legal rights as set forth herein. Plaintiff was over 40 at the time of employment and thus a protected class of employee and suffered age related discrimination, harassment and/or retaliation by Defendant-employer.

475.   Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, distress etc. according to proof at trial.

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL. 415-851-4368

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## TWENTY-FIRST CAUSE OF ACTION

### IMPROPER USE OF CREDIT REPORT

(In Violation of Cal. Civ. Code § 1785.1 *et seq.*)

(By Plaintiff Against All Defendants)

476.   Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

477.   Defendants violated Cal. Civ. Code 1785.1 by improperly obtaining and/or using Plaintiff's credit report in violation of Plaintiff's legal rights as set forth herein.

478.   Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, distress, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## TWENTY-SECOND CAUSE OF ACTION

### VIOLATION OF CAL. LABOR CODE 98.6

(By Plaintiff Against All Defendants)

479.   Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

480.   Defendants violated Cal. Labor Code section 98.6 in violation of Plaintiff's legal rights as set forth herein, making it illegal to retaliate against employees for taking protected legal actions.

481.   Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, serious distress etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## TWENTY-THIRD CAUSE OF ACTION

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL. 555-852-4388

VIOLATION OF CAL. LABOR CODE 210, 215, 204

(By Plaintiff Against All Defendants)

482.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

483.    Defendants violated Cal. Labor Code 210, 215, and 204 in violation of Plaintiff's legal rights as set forth herein for failing to pay wages due and when due.

484.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

TWENTY-FOURTH CAUSE OF ACTION

VIOLATION OF CAL. LABOR CODE 218.5

(By Plaintiff Against All Defendants)

485.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

486.    Defendants violated Cal. Labor Code 218.5 in violation of Plaintiff's legal rights as set forth herein, allowing for attorney fees for any action relating to non-payment of wages.

487.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

TWENTY-FIFTH CAUSE OF ACTION

VIOLATION OF LABOR CODE 225.5

(By Plaintiff Against All Defendants)

488.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA 93628
TEL 555-851-4388

489.    Defendants violated Cal. Labor Code 225.5 in violation of Plaintiff's legal rights as set forth herein.  Civil penalties are claimed under said code as private attorney general under 17200.

490.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## TWENTY-SIXTH CAUSE OF ACTION

### VIOLATION OF CAL. LABOR CODE 226

### (By Plaintiff Against All Defendants)

491.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

492.    Defendants violated Cal. Labor Code 226 in violation of Plaintiff's legal rights as set forth herein, requiring itemized pay statements and providing for civil penalties for violations, said civil penalties claimed as private attorney general under 17200 herein.

493.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## TWENTY-SEVENTH CAUSE OF ACTION

### VIOLATION OF CAL. LABOR CODE 226.7, 512

### (By Plaintiff Against All Defendants)

494.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

495.    Defendants violated Cal. Labor Code 226.7 and 512 in violation of Plaintiff's legal rights as set forth herein, in failing to provide meal and rest periods.

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL 415-851-4366

496.   Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## TWENTY-EIGHTH CAUSE OF ACTION

### VIOLATION OF CAL. LABOR CODE 432

(By Plaintiff Against All Defendants)

497.   Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

498.   Defendants violated Cal. Labor Code 432 in violation of Plaintiff's legal rights as set forth herein, in that Plaintiff is entitled to a copy of any writing signed.  Defendant employer did not provide copies of the signed writings.

499.   Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## TWENTY-NINTH CAUSE OF ACTION

### VIOLATION OF CAL. LABOR CODE 432.5

(By Plaintiff Against All Defendants)

500.   Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

501.   Defendants violated Cal. Labor Code 432.5 in violation of Plaintiff's legal rights as set forth herein, in that Defendant employer forced Plaintiff employee to sign illegal agreement.

502.   Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

STERLING LAW FIRM
4750 Sterry Drive
Palo Alto, CA, 95628
TEL. 415-851-4368

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

### THIRTIETH CAUSE OF ACTION

VIOLATION OF CAL. LABOR CODE 510 and 515d and 1194 and FLSA

(By Plaintiff Against All Defendants)

503.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

504.    Defendants violated Cal. Labor Code 510, 515(d), 1194 and the FLSA in violation of Plaintiff's legal rights as set forth herein, in that overtime pay is required after 8 hours in a workday or 40 hours in a workweek.

505.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

### THIRTY-FIRST CAUSE OF ACTION

VIOLATION OF CAL. LABOR CODE 970 & 972

(By Plaintiff Against All Defendants)

506.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

507.    Defendants violated Cal. Labor Code 970 and 972 in violation of Plaintiff's legal rights as set forth herein by making one or more misrepresentations inducing Plaintiff's change in residence for employment.

508.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

### THIRTY-SECOND CAUSE OF ACTION

VIOLATION OF CAL. LABOR CODE 1102.5

(By Plaintiff Against All Defendants)

509.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

510.    Defendants violated Cal. Labor Code 1102.5 in violation of Plaintiff's legal rights as set forth herein by retaliating against employee-Plaintiff for reporting legal violations of employer-Defendant.

511.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

THIRTY-THIRD CAUSE OF ACTION

VIOLATION OF CAL. LABOR CODE 3700.5, 3722(b), 3722(d), 3722(f)

(By Plaintiff Against All Defendants)

512.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

513.    Defendants violated Cal. Labor Codes 3700.5, 3722(b), 3722(d) and 3722(f) in violation of Plaintiff's legal rights as set forth herein by failing to provide workers compensation benefits to employee-Plaintiff.

514.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

THIRTY-FOURTH CAUSE OF ACTION

RETALIATORY/HOSTILE WORK ENVIRONMENT

IN VIOLATION OF TITLE VII

(By Plaintiff Against All Defendants)

STERLING LAW FIRM
4750 Steers Drive
Palm State, CA, 93628
TEL. 915-851-4388

515.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

516.    Defendants violated Title VII in violation of Plaintiff's legal rights as set forth herein by creating and/or maintaining a retaliatory and hostile work environment against Plaintiff's rights as an employee. *Floyd v. Office of Representative Sheila Jackson Lee*, 85 F. Supp. 3d 482 (D.D.C. 2015) (Judge Rudolph Contreras) – A hostile work environment claim based on retaliation requires plaintiff to proffer evidence that: (1) she engaged in statutorily protected activity; (2) she suffered a hostile work environment; and (3) a causal link connects the two.

517.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, distress etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## THIRTY-FIFTH CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS ACT OF 1866 & 1964

(By Plaintiff Against All Defendants)

518.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

519.    Defendants violated the Civil Rights Act of 1866 (42 USC 1981) and 1964 (42 USC 2000e) in violation of Plaintiff's legal rights as set forth herein.

520.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, distress etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## THIRTY-SIXTH CAUSE OF ACTION

### DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII

(By Plaintiff Against All Defendants)

521.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

522.    Defendants violated Title VII in violation of Plaintiff's legal rights as set forth herein.

523.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, distress etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

### THIRTY-SEVENTH CAUSE OF ACTION

RETALIATION AGAINST PROTECTED ACTION OF EMPLOYEE

IN VIOLATION OF TITLE VII

(By Plaintiff Against All Defendants)

524.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

525.    Defendants violated Title VII in violation of Plaintiff's legal rights as set forth herein by retaliating against Plaintiff's protected action or actions in asserting Plaintiff's legal rights.

526.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, distress etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

### THIRTY-EIGHTH CAUSE OF ACTION

DISCRIMINATION, HARASSMENT AND/OR RETALIATION

IN VIOLATION OF SECTION 1981

(By Plaintiff Against All Defendants)

527.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA, 95628
TEL. 916-851-4388

528.    Defendants violated Section 1981 in violation of Plaintiff's legal rights as set forth herein by discriminating, harassing, and/or retaliating against Plaintiff as alleged herein.

529.    Plaintiff suffered compensable damages including loss of employment money and/or benefits, reputation, back pay, front pay, future earnings capacity, distress etc. according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

### THIRTY-NINTH CAUSE OF ACTION

Request for Declaratory and Injunctive Relief (CCP § 1060; 42 USC 2000e-5(g))

(Against all Defendants)

530.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint, as if fully set forth herein.

531.    An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties in that various false and misleading representations and/or unfair and deceptive practices engaged in by Defendants render the supposed NDA written agreement unenforceable.

532.    Plaintiff desires a judicial determination of their rights and duties, and a declaration as to whether the written document is enforceable.

533.    A judicial declaration is necessary and appropriate under the circumstances in order that Plaintiff may ascertain the rights and duties, if any, under the oral and/or written and/or implied agreements at issue.

534.    Plaintiff requests injunctive relief against Defendants under 42 USC 2000e-5(g) including that the court enjoin defendants from engaging in the unlawful employment practice(s), and order such affirmative action as appropriate including reinstatement of employee(s), with back pay, or other equitable relief as the court deems appropriate or as subsequently requested by Plaintiff herein.

535.    As a direct and proximate result of Defendants', and each of their acts, Plaintiff has been damaged in an amount to be determined at trial and has incurred and will continue to incur costs and damages including, but not limited to, loss of employment money and/or benefits,

STERLING LAW FIRM
4750 Street Drive
Palo Alto, CA 95628
TEL: 916-852-4388

reputation, back pay, front pay, future earnings capacity, distress, attorney fees etc. according to proof at trial.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants jointly and severally as follows:

1. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of California;

2. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

3. An order directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory and harassing and retaliatory treatment and otherwise unlawful conduct, to pay Plaintiff all expectation damages due to Defendant's breach(es) of contract(s), and/or reinstatement of employment with all back pay and/or front pay, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect her employment and personal life;

4. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm, including all late, lost and unpaid wages and benefits, past, present and future;

5. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career prospects, potential and fulfillment;

6. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, severe emotional distress and physical injuries;

STERLING LAW FIRM

7.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest, including all statutory and civil penalties recoverable under the private attorney general provisions of the UCL, B&P 17200 et seq.;

8.      An award of punitive and exemplary damages in an amount according to proof at trial to punish Defendant and deter such unlawful misconduct from occurring in the future;

9.      An award of all costs and attorneys' fees incurred by Plaintiff to the fullest extent permitted by law;

10.     For general, special, expectation and compensatory damages according to proof in excess of $1,000,000;

11.     For restitution and recovery of amounts received by Defendants as a result of their fraud and/or deceit and/or misrepresentations according to proof in excess of $1,000,000;

12.     For restitution and recovery of amounts received by Defendants as a result of their unfair competition according to proof in excess of $1,000,000;

13.     For restitution and recovery of amounts received by Defendants as a result of their breach(es) of contract(s) according to proof in excess of $1,000,000;

14.     For restitution and recovery of amounts received by Defendants as a result of their negligent interference with prospective economic relations/advantage according to proof in excess of $1,000,000;

15.     For restitution and recovery of amounts received by Defendants as a result of Federal and State Tax Evasion and failure to pay Federal and State mandated employment taxes and benefits according to proof in excess of $1,000,000;

16.     For such other relief as this court deems equitable, just or proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable except as to attorney fees and costs.

DATE: February 23, 2018                            STERLING LAW FIRM


                                                   /s/ Nathaniel Sterling
                                                   Nathaniel Sterling, Esq.
                                                   Attorney for Plaintiff

STERLING LAW FIRM
4750 Sierra Drive
Palo Alto, CA, 95628
TEL: 415-851-4368